Wesley N. TURNER III, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 88–SC–000020–MR.

Supreme Court of Kentucky.

Dec. 15, 1988.

Rehearing Denied May 4, 1989.

Robert W. Baxter, Lexington, for appellant.

Frederic J. Cowan, Atty. Gen., Michael L. Harned, Asst. Atty. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

The appellant was convicted of first-degree rape and sentenced to 20 years' imprisonment. He was also convicted of first-degree sexual abuse and sentenced to 5 years to be served consecutively with the 20–year sentence.

He contends on appeal that the trial court erred by refusing his motion for a physical examination of the victim by his own experts, by excluding him from a hearing to determine the competency of the alleged child victim to testify, in its finding that the alleged victim was competent to testify, by failure to grant him a directed verdict on the charge of sexual abuse, and by permitting a conviction on both of the charges which arose out of one single incident.

■ The alleged victim was the appellant's four-year-old daughter. Her testimony was sufficient to permit a jury to believe that appellant made sexual contact upon her private parts with his hand and that he engaged in sexual intercourse with her. There was no error in the denial of a directed verdict. Likewise, we find no error in the conduct of the competency hearing or in the court's finding of competency.

■ We must reverse the judgment, however, for two reasons. First, there was only one incident about which testimony was offered. The evidence does not show that the sexual contact between the appellant's hand and his daughter's private parts was distinct and separate from the incident of rape. As far as we can discern from her testimony, physical contact was only incidental to the accomplishment of the rape, and therefore, the charge of sexual abuse merged into the charge of rape. The conviction of both offenses constituted double jeopardy, and the conviction for first-degree sexual abuse is reversed.

We also hold the denial of appellant's request for a physical examination of the alleged victim was a prejudicial error. Although we uphold the decision of the trial court as to the competency of the four-year-old child witness, and the sufficiency of her testimony to sustain the verdict, we note that her testimony occupied 60 pages of the transcript of record, much of which was rambling, and only a small portion of her testimony, in response to leading questions by the Commonwealth, was sufficient to sustain the conviction.

A most material element in the conviction was the testimony of Dr. Reva Tackett, a gynecologist, who had examined the alleged victim at the request of the Richmond Department of Social Services. She testified that the child, at the time of her examination, had injuries to the hymenal ring at the 3 o'clock, 5 o'clock, 7 o'clock, 9 o'clock, and 11 o'clock positions. Each of the injuries had healed and had formed scar tissue. Because of the healing, Dr. Tackett could express no opinion as to the age of the injuries.

Dr. Tackett acknowledged that small girls sometimes masturbate or insert foreign objects into their vaginas which rupture the hymenal ring, but she expressed the opinion that some of the injuries to the alleged victim were caused by penile penetration. She reached this conclusion, not from the nature of the injuries, but from their location on the hymenal ring. She testified that injury to the superior position of the ring would likely be caused by digital penetration or by the insertion of foreign objects, but that tears in the posterior section of the ring were probably the result of penile penetration. This is true, Dr. Tackett testified, because penile penetration involves entry from the posterior position with the pressure going downward toward the posterior vaginal wall.

Perhaps in the case of sexually active females a vaginal examination, remote in time from an allegation of sexual abuse, would reveal little of probative value as to whether sexual assault had occurred, but in the case of a four-year-old child, evidence of tears in the hymenal ring was a significant circumstance, and testimony that penile penetration caused the injury was a significant incriminating factor.

In this case, the alleged victim was only four years old. The physical examination of the child by an independent expert might have permitted the appellant to offer evidence to contradict that offered by the Commonwealth as to whether there were, in fact, any injuries to the hymenal ring. If such an injury was found, the examination by an independent expert may have enabled appellant to contradict testimony for the Commonwealth that the location of the injuries indicated the probability of penile penetration. In any event, the examination of the alleged victim by an independent expert and consultation with that expert as to the results of the examination would have been of material assistance to the appellant in his cross-examination of Dr. Tackett.

There does not appear to be any specific rule of criminal procedure concerning physical examination of prosecuting a witness which is directly applicable to this case.

RCr 9.46 does permit the appointment by the court of expert witnesses in criminal cases. CR 35.01 provides that when the mental or physical condition of a party or a person in the custody or under the control of a party, is in controversy, the court may order a physical examination. The Commonwealth points out that this rule is not expressly applicable to this case because the four-year-old child is not a party nor is she under the control of a party.

We have approved orders that blood samples be produced for analysis in paternity cases, but this is required by statute, K.R.S. 406.081.

In some cases the physical condition of an alleged victim may, in itself, negate the fact that a particular crime has been committed. In a case such as this, the critical question is whether the evidence sought by the appellant is of such importance to his defense that it outweighs the potential for harm caused by the invasion of the alleged victim's privacy and the probability that the prospect of undergoing a physical examination might be used for harassment of a prosecuting witness.

We must be vigilant not to open the door to the opportunity for a defendant in a criminal case to invade the privacy of a prosecuting witness or to harass the witness. In this case, a physical examination of the four-year-old child might have disclosed evidence to completely refute the charge, and at the very least, would have been of enormous benefit to the appellant in the conduct of the trial. In our view, this out-weighs the potential for harm above expressed.

In these circumstances and limited to the facts of this case, we hold that appellant, as a matter of due process and fairness, was entitled at least to have the alleged victim examined by an independent gynecologist in preparation for trial.

The judgment is reversed for further proceedings consistent with this opinion.

GANT, LAMBERT, STEPHENSON and VANCE, JJ. concur.

STEPHENS, C.J., concurs in part and dissents in part by separate opinion in which LEIBSON, J., joins.

WINTERSHEIMER, J., dissents by separate opinion.

STEPHENS, Chief Justice, concurring in part/dissenting in part.

I join the majority insofar as it reverses appellant's conviction on double jeopardy grounds, and for denial of the appellant's right to a physical examination of the victim. However, I disagree with its finding no error in the conduct of the competency hearing. Appellant's conviction should be reversed because he was excluded, over objection, from an in-chambers hearing conducted to determine the alleged child victim's competency as a witness, in violation of the eleventh section of the Bill of Rights of the Kentucky Constitution.

> In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; *to meet the witnesses face to face*, and to have compulsory process for obtaining witnesses in his favor.

Ky. Const. sec. 11 (emphasis added).

The facts of this case require the Court to reconsider the scope of its holding in *See v. Commonwealth*, Ky., 746 S.W.2d 401 (1988). That case was this Court's first opportunity to consider the defendant's right to be present during a competency hearing after the United States Supreme Court rendered its decision in *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). In *Kentucky v. Stincer*, the Kentucky Supreme Court had reversed the defendant's conviction of sodomy of several children, because his exclusion from the competency hearing violated his right to confrontation guaranteed by both the sixth amendment to the United States Constitution and section eleven of the Kentucky Constitution. *Stincer v. Commonwealth*, Ky., 712 S.W.2d 939, 940 (1986). The United States Supreme Court granted certiorari on the sixth amendment grounds, and reversed the Kentucky Supreme Court. *Kentucky v. Stincer*, 107 S.Ct. at 2666.

> Because [Stincer] had the opportunity for full and effective cross-examination of the two witnesses during trial, and *because of the nature of the competency hearing at issue in this case*, we conclude that respondent's rights under the Confrontation Clause were not violated by his exclusion from the competency hearing of the two girls.

*Id.* (emphasis added).

The United States Supreme Court did not hold that a defendant's exclusion from a competency hearing could never violate his or her confrontation rights under the Sixth Amendment. "The appropriate question is whether there has been any interference with the defendant's opportunity for effective cross-examination. No such interference occurred in this case." *Id.* at 2667 n. 17.

In *See, supra,* the Kentucky Supreme Court retreated from its still viable position that section eleven of the Kentucky Constitution guaranteed the criminal defendant's right to attend competency hearings. First, in a feat of linguistic sleight of hand, the majority found no significant difference between the confrontation rights guaranteed by the United States Constitution and the "face to face" meeting with witnesses protected by the Kentucky Constitution. "The drafters of our state constitution did not add the phrase 'face to face' to its protections afforded an accused merely to reconcile an irreconcilable difference." *See,* 746 S.W.2d at 404 (Stephens, C.J., dissenting).

Second, the majority drew the erroneous conclusion that if this Court held that excluding a criminal defendant from a competency hearing violated the Kentucky Constitution, "we should place ourselves in direct opposition to an opinion of the United States Supreme Court, even though we may have the right to do so as a matter of state law." *Id.* at 402–03. Choosing not to take this position, the Court found *Kentucky v. Stincer* controlled and required a finding that a defendant has no right to attend a competency hearing.

As noted above, the United States Supreme Court did not require such a finding; it held instead that Sergio Stincer's constitutional rights were not violated under the circumstances. It took a case-by-case approach, which should have been applied in *See*. Therefore, this Court would not place itself in direct opposition to a United States Supreme Court opinion if, in an appropriate set of facts, it found a violation of section eleven of the Kentucky Constitution, because such a finding under the sixth amendment would not necessarily be inconsistent with *Kentucky v. Stincer*.

If ever a set of facts demanded reconsideration of this Court's interpretation of section eleven, the case at bar presents them.

[W]hen a defendant is placed on trial by the state for criminal conduct he is entitled to be present and to *assist his counsel at hearings* to determine the competency of witnesses against him.

*Commonwealth v. Stincer*, 712 S.W.2d at 941. Appellant Turner was in a particularly advantageous position to assist his attorney in asking questions that would have resulted in a more reliable competency determination. Appellant was the alleged victim's father. He knew her background and could have advised his attorney of inaccuracies or untruths in the witness's answers on which to follow-up.

In addition to being excluded from the hearing, appellant was further prejudiced by surrounding circumstances. He and the victim's mother had divorced; custody was granted to the mother. The evidence revealed significant post-divorce discord. For example, appellant's ex-wife admitted on cross-examination that during and subsequent to the divorce she brought three unsubstantiated allegations of sexual and physical abuse. (The divorce judge refused to restrict appellant's visitation on the basis of the claims.) Yet, the mother was permitted to attend the competency hearing, while appellant, the father, was not. The underlying domestic dispute should have aroused sufficient suspicion of coaching the victim to have compelled the trial court to exclude the mother as well as appellant, if either was to be excluded. A preferable alternative would have been to conduct the competency-to-testify proceeding in open court and before the jury.

The case at bar presents this Court with the opportunity to correct the misleading conclusions drawn in *See*. If the eleventh amendment to the Kentucky Constitution does not demand that a defendant be permitted to attend competency hearings in all cases; and I would hold that it does unless a defendant waives the right by threatening or other inappropriate behavior; then it at least requires that appellant Turner should have been permitted to attend, given the facts of this case. These facts further support mandating an open court hearing.

If the hearing to determine whether the child is a competent witness is held in open court in the presence of a jury, it will (1) *assist* the jury in evaluating the child's truthfulness and (2) *avoid* the potential for intimidation that results from the intimacy inherent in an in-chambers procedure.

*See*, 746 S.W.2d at 404 (Stephens, C.J., dissenting) (emphasis in original).

When a defendant is on trial for a serious criminal offense, and faces a lengthy jail term as a possible penalty, as in all criminal prosecutions, he or she had the right to be present and to assist counsel at hearings to determine the competence of witnesses against him. Because the majority refuses to recognize this right, I must dissent from that part of the opinion denying error in the conduct of the competency hearing.

LEIBSON, J., joins in this concurring in part and dissenting in part opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because Turner was not entitled to have his own expert conduct a second physical examination of the four-year-old victim.

The majority opinion is on extremely shaky ground in my opinion because it clearly admits that there is not a specific

rule concerning physical examination of a prosecuting witness which is directly applicable to this case. Consequently, I can see no legal or logical reason for subjecting this prosecuting witness to further harassment. The trial judge did not abuse his discretion in refusing the defendant's motion. The majority opinion contains no citation to any Kentucky authority or any other legal authority. It is simply a substitution by a reviewing court of its view of the trial situation for that of the trial judge. There is no basis for such a substitution.

As the majority admits, CR 35.01 provides for a mental or physical examination of a party or a person under the custody or control of a party. This rule is not applicable to this situation. *Cf. Wagner v. Commonwealth*, Ky., 581 S.W.2d 352 (1979).

The defendant received all that he was entitled to under RCr 7.24(1), (2). Prior to trial, he received all results and reports of physical or mental examinations and of scientific tests or experiments made in connection with the prosecution. He had every opportunity to review the examination procedures and findings of the testifying prosecution physician. The defense is surely entitled to an opportunity for effective cross-examination but not cross-examination to every extent the defense might wish. *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). A review of the record indicates a thorough and extensive cross-examination by defense counsel. There was nothing to prevent the defendant from having his own expert testify at trial in an attempt to impeach the prosecution witness.

The defendant is not seeking the testimony of medical personnel who have already examined the child for treatment; he seeks examination for the purpose of obtaining evidence and testimony for use at trial. There is no authority to support such a request. *Mosley v. Commonwealth*, Ky., 420 S.W.2d 679 (1967) does not support the argument of the defendants. Even if a defendant might be entitled to have his own expert examine a child victim, such examination should be allowed only when there is a substantial showing of need or justification or other good cause pursuant to CR 35.01. That is not the situation in this case. The trial court is not to allow a defendant to go on a fishing expedition that would expose the child victim to additional trauma by means of a second physical examination.

I am persuaded by the legal reasoning of the West Virginia Supreme Court when it determined that "child victims of sexual abuse doubtless have undergone a horrifying experience. For that reason it is necessary to assure the child a modicum of protection." *Burdette v. Lobban*, 323 S.E.2d 601 (W.Va., 1984). Certainly the accused has the right to employ all the constitutional guarantees in order to defend himself. But by the same token the child victim also has rights to be protected against unrestrained and unnecessary private examination by adverse interests. *Burdette, supra.* I cannot agree with the majority when it observes that the rights of the accused in this case should outweigh the rights of the innocent victim. There must be a balance between the rights of competing interests and the assessment of the validity of such a balance is best left in the sound discretion of the trial court who has the opportunity to observe all the circumstances surrounding the trial of a case.

Equal justice under law for all is not just a legal cliché. It must have meaning for all persons regardless of gender or age. It is the absolute obligation of reviewing courts as well as trial courts to be fair and to balance all competing rights and interests so as to produce a just result.