Jeff Lynn **BART**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 96–SC–308–MR.

Supreme Court of Kentucky.

Sept. 4, 1997.

V. Gene Lewter, Lexington, for Appellant.

A.B. Chandler, III, Attorney General, Matthew D. Nelson, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for Appellee.

JOHNSTONE, Justice.

Jeff Lynn Bart appeals as a matter of right from a conditional plea of guilty to one count of Sodomy in the First Degree and one count of Use of a Minor in a Sexual Performance. The trial court imposed the recommended sentences of twenty years and five years, to run concurrently.

A Fayette County Grand Jury returned a twenty-three count indictment against Bart on November 6, 1995. He was charged with fifteen counts of Use of a Minor in a Sexual Performance, one count of Rape in the First Degree, two counts of Sodomy in the First Degree, three counts of Sexual Abuse in the First Degree, and two minor drug related offenses. All of the sexual offenses involved a minor daughter of Bart's girlfriend.

The sole issue presented by this appeal is whether Bart was entitled to an independent psychological evaluation of the minor victim to determine her competence to testify at trial as a witness. The question arose as the result of counseling that the minor, fifteen years of age at the time of trial, had been receiving from a therapist. Marcia Risk, a licensed clinical social worker, forwarded a letter to the prosecutor nine days prior to trial stating that the child was "extremely

stressed about several matters, particularly about testifying." Risk related that the minor was "moderately depressed, anxious, and emotionally very vulnerable. Stress in the past has pushed her to be suicidal and to psychologically decompensate. At those times she has reported auditory and visual hallucinations." She further related that the child's misgivings about testifying against Bart, who at times took care of the family, might cause her testimony to "be puzzling and perhaps even contradictory."

Upon receipt of a copy of the letter from the prosecutor, Bart moved for a pretrial competency hearing and, in the alternative, an independent mental evaluation. Bart also subpoenaed the minor's mental health records from the Bluegrass Mental Health–Mental Retardation Board. The trial judge denied access to the victim's mental health records, but granted the motion for a competency hearing. At the hearing, the child victim testified, followed by her therapist. At the conclusion, the trial judge found the victim competent to testify and denied Bart's motion for an independent psychological evaluation forming the basis of this appeal.

■ We first note that CR 35.01 provides no basis for Bart's request that an independent examination be conducted. The rule provides that when "the mental or physical condition (including the blood group) of a *party,* or of a person in the custody or under the legal control of a *party,* is in controversy, the court . . . may order the party to submit to a physical or mental examination. . . ." (Emphasis ours). Clearly, we are not dealing with a party or a person under the legal custody of a party. Although CR 35.01 is referred to in *Mack v. Commonwealth,* Ky., 860 S.W.2d 275 (1993) and *Turner v. Commonwealth,* Ky., 767 S.W.2d 557 (1988), *cert. denied,* 493 U.S. 901, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989), we held in those cases that the rule does not expressly provide for an examination of a prosecuting witness who is not a party.

■ Bart points out, and correctly so, that we did hold in *Mack* and *Turner* that although CR 35.01 does not expressly provide for an examination of a nonparty prosecuting witness, due process and fundamental fairness may, depending upon the circumstances, entitle a defendant to have an alleged victim examined by an independent expert, if not a defense expert.

However, we find *Mack* and *Turner* to be easily distinguishable from the case at bar. In *Turner,* the defendant requested a physical examination of a child victim in a rape case to refute testimony that tears in the victim's hymenal ring were probably caused by penile penetration due to the location of the injuries. We framed the critical question as "whether the evidence sought by the appellant is of such importance to his defense that it outweighs the potential for harm caused by the invasion of the alleged victim's privacy and the probability that the prospect of undergoing a physical examination might be used for harassment of a prosecuting witness." *Turner,* 767 S.W.2d at 559. The purpose of the requested examination was to gather physical evidence which the accused hoped would be exculpatory.

In *Mack,* the appellant requested a psychological examination of the child victim for the purpose of showing concoction or the transferring of prior experiences to the appellant. We reiterated our holding in *Turner* by stating that even though CR 35.01 is not applicable to a nonparty, "due process and fundamental fairness may, depending on the circumstances, entitle the defendant to have the alleged victim examined by an independent expert, if not a defense expert." *Mack,* 860 S.W.2d at 277. It is critical to note that neither of the above cases deal with the issue of competency of the witness to testify, but rather the elements and substance of the charges against the defendant.

In this case, the trial court conducted a competency hearing as requested by Bart. There is no doubt that some of the victim's testimony during that proceeding bordered on the bizarre. For instance, she stated that she heard voices and that the voices told her to do "wrong things"; that she saw faces on the walls and she did not always know that they were not real; that she thought some of the voices were of demons and they told her to hurt herself, or kill herself, or do the same to other people; that she sometimes saw her

deceased grandmother who talked to her, as well as her deceased father, whom she could describe though he died when she was two; that the demons had "thick eyebrows that came straight down, ears pointed, with real sharp teeth"; and that the demons she saw had animal bodies.

Yet, a review of the videotaped hearing also reveals a polite and rather articulate fifteen year old who testified that she knew the difference between the truth and lies. The victim demonstrated the ability to observe, recollect, and relate the facts.

KRE 601(b) discusses the qualifications of competency as a witness as follows:

> *Minimal qualifications.* A person is disqualified to testify as a witness if the trial court determines that he:
>
> (1) Lacked the capacity to perceive accurately the matters about which he proposes to testify;
>
> (2) Lacks the capacity to recollect facts;
>
> (3) Lacks the capacity to express himself so as to be understood, either directly or through an interpreter; or
>
> (4) Lacks the capacity to understand the obligation of a witness to tell the truth.

██ KRS 421.200 provides that "every person is competent to testify for himself or another, unless he be found by the court incapable of understanding the facts concerning which his testimony is offered." This presumption of competency includes infants. *See Hardy v. Commonwealth,* Ky., 719 S.W.2d 727 (1986). It is within the sound discretion of the trial court to determine whether a witness is competent to testify. *Pendleton v. Commonwealth,* Ky., 685 S.W.2d 549, 551 (1985). The trial judge is in the unique position to observe witnesses and to determine their competency. *See Kotas v. Commonwealth,* Ky., 565 S.W.2d 445, 447 (1978). The standard of competency of a child witness by which the discretion of the trial judge is to be guided is stated in *Capps v. Commonwealth,* Ky., 560 S.W.2d 559, 560 (1977), wherein we stated:

> When the competency of an infant to testify is properly raised it is then the duty of the trial court to carefully examine the witness to ascertain whether she (or he) is sufficiently intelligent to observe, recollect and narrate the facts and has a moral sense of obligation to speak the truth. (Quoting *Moore v. Commonwealth,* Ky., 384 S.W.2d 498, 500 (1964)).

In making its determination of competency in this case, the trial court heard the direct and cross-examination of both the child victim and her therapist. The therapist testified that the victim recalled memories clearly and that, in her opinion, the victim was not describing things that did not happen. The trial judge had the opportunity to observe the demeanor of the victim and her therapist and thereafter determined that the witness was competent. Having carefully reviewed the record and testimony presented, we find no abuse of discretion in the trial court's ruling.

██ Moreover, we are unpersuaded that a defendant should be entitled to an independent evaluation of a nonparty witness to enhance his or her position in a competency hearing. We have long left witness competency decisions to the trial courts of this Commonwealth, and we perceive no compelling reason to disturb the traditional approach that the trial judge is in the best position to make these decisions.

For the foregoing reasons, the judgment and sentence of the Fayette Circuit Court are affirmed.

STEPHENS, C.J., and COOPER, GRAVES, LAMBERT and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. As we stated in *Mack v. Commonwealth,* Ky., 860 S.W.2d 275, 277 (1993), "due process and fundamental fairness may, depending on the circumstances, entitle the defendant to have the alleged victim examined by an independent expert, if not a defense expert." The case herein involved multiple counts of criminal sexual behavior committed against a single victim. During a hearing to determine whether the victim was competent to testify, or alternatively, whether a further indepen-

dent evaluation was needed, the young woman testified to a number of things that cast grave doubt on her competency and ability to separate fantasy from reality.

While she did testify that she knew the difference between the truth and a lie, she further stated that she heard voices that would tell her to do "wrong things" to hurt people; that she saw faces on walls, sometimes on a daily basis; and that she didn't always know that the visions she saw were not real. She described the faces as being unlike anyone she knew, having animal bodies, pointed ears, thick eyebrows and sharp teeth. She also testified that she thought some of the voices were demons, telling her to hurt or kill herself or other people. She stated that she could not tell whether the voices were male or female because there were several voices together. She stated that she saw hallucinations every day, sometimes seeing her deceased grandmother or father, both of whom spoke to her. She testified that while she had experienced no visions on the day of her testimony, she had seen them on the preceding night.

A licensed clinical social worker, who had been providing the victim with therapy, testified that in her opinion the victim suffered from Post Traumatic Stress Disorder, with a provisional diagnosis of "Dissociative Disorder." The latter condition, she stated, could adversely affect the victim's memory and her perception of facts. The therapist also testified that the victim had never revealed to her that she saw hallucinations every day or that she saw visions of her father and grandmother who spoke to her.

It is clear that the victim suffered from severe mental and emotional problems. Both her own testimony and that of her therapist indicate the need for an evaluation performed by a mental health expert who is fully advised of all of the young woman's symptoms and is independent. The seriousness of the charges and the long time period over which the events were alleged to have occurred—seven years, from 1988 to 1995—render it fundamentally unfair for Appellant to have to respond to these charges without an independent evaluation of the victim's mental condition.