Dwayne Earl BISHOP, Appellant,

v.

John David CAUDILL, Judge Floyd
Circuit Court, Appellee,

and

Commonwealth of Kentucky,
Real Party in Interest.

No. 2002–SC–0372–MR.

Supreme Court of Kentucky.

Oct. 23, 2003.

Dennis Stutsman, Harolyn R. Howard, Emily Holt, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General of Kentucky, Ian G. Sonego, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

GRAVES, Justice.

Appellant, Dwayne Earl Bishop, has been indicted in the Floyd Circuit Court for the September 2000 murder of his estranged wife. The Court of Appeals denied Appellant's petition for a writ to prohibit the respondent judge from enforcing an order directing Appellant to submit to an independent competency examination by a mental health professional selected and compensated by the Commonwealth. Appellant appeals to this Court as a matter of right.

In response to defense counsel's motion, the trial court ordered the staff of the Kentucky Correctional Psychiatric Center (KCPC) to "examine and treat the Defendant for both mental and physical conditions, as determined by the medical judgment of the examining personnel" and, upon completion of examination and treatment, to prepare a report addressing his competency to stand trial. The trial court initially ordered both a competency and criminal responsibility evaluation but, on defense counsel's request, issued an amended order limiting the evaluation to Appellant's competency to stand trial.

After the KCPC report was completed, and Appellant was returned to custody in Floyd County, the matter came before the trial court for a hearing on Appellant's competency to stand trial. However, the trial court did not actually conduct a competency hearing because a collateral issue arose concerning the possible removal of Appellant's trial counsel. Instead, the trial court ordered the parties to brief the removal issue. Regarding the competency issue, the order also provided: "FURTHER, Counsel for both the Commonwealth and the defendant should, if they wish, move within that time period *for their own evaluation of the Defendant.*" (Emphasis added).

Both the Commonwealth and Appellant moved for independent evaluations. Appellant objected to the Commonwealth's motion on the grounds that the defense did not intend to introduce evidence of Appellant's mental health at the time of the offense, and the Commonwealth was not otherwise authorized to obtain its own examination. Following a hearing, the trial court ruled that the Commonwealth was entitled to an independent competency examination. Appellant thereafter filed a petition for a writ of prohibition in the Court of Appeals. In denying such, the Court of Appeals explained:

> The petition recites no authority for denying the Commonwealth the opportunity to conduct the examination. The petition does raise the possibility of misuse of information obtained in the evaluation. However, the petitioner has not shown that the judge would permit such misuse of information nor has he shown that an appeal of any conviction would not provide an adequate remedy.

■ Appellant argues that while an independent examination by the Commonwealth would be warranted if he were asserting a defense of insanity or mental illness, such an examination solely for the purpose of ascertaining competency to

stand trial is not authorized by the Kentucky Revised Statutes or our Rules of Criminal Procedure. We agree.

Criminal Rule 8.06, Incapacity to stand trial, provides:

If upon arraignment or during the proceedings there are reasonable grounds to believe that the defendant lacks the capacity to appreciate the nature and consequences of the proceedings against him or her, or to participate rationally in his or her defense, all proceedings shall be postponed until the issue of the incapacity is determined as provided by KRS 504.100.

KRS 504.100 sets forth the procedure when the trial court has "reasonable grounds" to believe competency is an issue:

(1) If upon arraignment, or during any stage of the proceedings, the court has reasonable grounds to believe the defendant is incompetent to stand trial, the court shall appoint at least one (1) psychologist or psychiatrist to examine, treat and report on the defendant's mental condition.

(2) The report of the psychologist or psychiatrist shall state whether or not he finds the defendant incompetent to stand trial. If he finds the defendant is incompetent, the report shall state:

(a) Whether there is substantial probability of his attaining competency in the foreseeable future; and

(b) What type treatment and what type treatment facility the examiner recommends.

(3) After the filing of a report (or reports), the court shall hold a hearing to determine whether or not the defendant is competent to stand trial.

▮ It is within the trial court's discretion to determine whether there are "reasonable grounds" to believe a defen-

dant may be incompetent to stand trial. *Dye v. Commonwealth*, Ky., 477 S.W.2d 805 (1972). However, once facts known to the trial court are sufficient to place a defendant's competency in issue, an evaluation and evidentiary hearing are mandatory. *Mills v. Commonwealth*, Ky., 996 S.W.2d 473 (1999), *cert. denied*, 528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088 (2000). Further, pursuant to KRS 504.090, "No defendant who is incompetent to stand trial shall be tried, convicted or sentenced so long as the incompetency continues."

In contrast, KRS 504.070, which pertains to evidence of mental illness or insanity, provides:

(1) A defendant who intends to introduce evidence of his mental illness or insanity *at the time of the offense* shall file written notice of his intention at least twenty (20) days before trial.

(2) The prosecution shall be granted reasonable time to move for examination of the defendant, or the court may order an examination on its own motion.

(3) If the Court orders an examination, it shall appoint at least one (1) psychologist or psychiatrist to examine, treat and report on the defendant's mental condition. If it appears the examination will not be completed before the trial date, the court may, on its own motion or on motion of either party, postpone the trial date until after the examination.

(4) No less than ten (10) days before trial, the prosecution shall file the names and addresses of witnesses it proposes to offer in rebuttal along with reports prepared by its witnesses. (Emphasis added)

In *Coffey v. Messer*, Ky., 945 S.W.2d 944, 945 (1997), we noted that "evidence of mental illness or insanity" includes evidence that a defendant was acting under

extreme emotional disturbance (EED) at the time of the offense. *See also Stanford v. Commonwealth,* Ky., 793 S.W.2d 112, 115 (1990). Similarly, RCr 7.24(3) imposes pretrial notice requirements when a defendant intends to introduce evidence at trial as to mental state at the time of the offense:

(B)(i) If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of his or her guilt, the defendant shall, at least 20 days prior to trial, or at such later time as the court may direct, notify the attorney for the Commonwealth in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

(ii) When a defendant has filed the notice required by paragraph (B)(i) of this rule, the court may, upon motion of the attorney for the Commonwealth, order the defendant to submit to a mental examination. No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, shall be admissible into evidence against the defendant in any criminal proceeding. No testimony by the expert based upon such statement, and no fruits of the statement shall be admissible into evidence against the defendant in any criminal proceeding except upon an issue regarding mental condition on which the defendant has introduced testimony.

(C) If there is a failure to give notice when required by this rule or to submit to an examination ordered by the court under this rule, the court may exclude such evidence or the testimony of any expert witness offered by the defendant on the issue of his or her guilt.

 Competency to stand trial is not to be confused with the defense of mental illness or insanity. Competency to stand trial pertains to the defendant's mental state at the time of trial, whereas an insanity defense concerns the defendant's mental state at the time of the commission of the crime. A defendant may be sane at the time of the offense but incompetent to stand trial; or he may be insane or mentally ill at the time of the offense, yet competent to stand trial. KRS 504.060 defines these concepts as follows:

(4) "Incompetency to stand trial" means, as a result of a mental condition, lack of capacity to appreciate the nature and consequences of the proceedings against one or to participate rationally in one's own defense;

(5) "Insanity" means, as a result of mental condition, lack of substantial capacity either to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law;

(6) "Mental illness" means substantially impaired capacity to use self-control, judgment, or discretion in the conduct of one's affairs and social relations, associated with maladaptive behavior or recognized emotional symptoms where impaired capacity, maladaptive behavior, or emotional symptoms can be related to physiological, psychological, or social factors.

 The inquiry into a defendant's competency to stand trial is very different and distinct from an inquiry into whether the defendant is criminally responsible for the acts with which he is charged. In *Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993), the United States Supreme Court held that a defendant is competent if he can "consult

with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." The Court noted that a competent defendant can make a "reasoned choice" among the alternatives available to him when confronted with such crucial questions as whether he should testify, waive a jury trial, cross-examine witnesses, put on a defense, etc. *Id.* at 397–98, 113 S.Ct. at 2686. As further explained by Professors Fortune and Lawson in *Kentucky Criminal Law*, § 5–4(b) p. 210 (Lexis 1998):

> The focus in these determinations is on the defendant's mental condition at the time of the proceeding (not at the time of the criminal act). The following statement describes the nature of the inquiry:
>
> > 'Under this test, there are two distinct matters to be determined:
> >
> > (1) whether the defendant is sufficiently coherent to provide his counsel with information necessary or relevant to constructing a defense; and
> >
> > (2) whether he is able to comprehend the significance of the trial and his relation to it. The defendant must have an 'ability to confer intelligently, to testify coherently, and to follow the evidence presented.' It is necessary that the defendant have a rational as well as a factual understanding of the proceedings.'
>
> Would defendant recognize false testimony by a witness and would he know to advise counsel of that fact? Does he understand the roles of trial participants (i.e. that the prosecutor is his adversary, that the judge decides his fate, that his counsel acts in his best interest, etc.)? Does he understand that convictions will result in sanctions? The inquiry is a factual one that necessarily depends upon the peculiar facts and circumstances of the case. (*quoting* LaFave & Scott, *Criminal Law*, 333–34 (2d ed.1986)).

As provided in KRS 504.100, the determination of competency is made by the trial court. If the trial court has reasonable grounds to believe that a defendant's competency to stand trial is at issue, the statute mandates that a psychologist or psychiatrist be appointed to examine, treat, and report on the defendant's condition. A competency examiner is working for the court, not necessarily the defense or the Commonwealth. *Binion v. Commonwealth*, Ky., 891 S.W.2d 383 (1995). Thereafter, the statute requires an evidentiary hearing at which all parties—the court, the defendant, and the prosecution—are entitled to examine the evaluator and the basis of the report. *Gabbard v. Commonwealth*, Ky., 887 S.W.2d 547 (1994). However, nothing in the language of the statute or criminal rules authorizes an independent evaluation by the Commonwealth.

The policy reasons behind prohibiting the Commonwealth from obtaining its own competency evaluation are clear. Compelling someone accused of a crime to submit against his or her will to a psychological examination could likely produce testimony, the effect of which could not be obliterated by appellate remedies. That is, an unauthorized psychological examination by the Commonwealth's agent could result in the disclosure of prior conduct that would not otherwise be accessible to the prosecution. For example, the prosecution's mental health examiner may learn that a defendant engaged in the commission of crimes for which he had never been charged. The adverse consequences are particularly evident in this case since defense counsel moved for the competency evaluation because Appellant has been actively working against his trial attorneys.

Counsel has expressed concern that Appellant would disclose key defense strategies to a Commonwealth's examiner.

We are cognizant of the language contained in RCr 7.24(3)(B)(ii) which protects a defendant's Fifth Amendment rights in that it provides that "[n]o statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, shall be admissible into evidence against the defendant in any criminal proceeding." Nonetheless, in the context of an examination for the sole purpose of ascertaining competency, especially if ordered against a defendant's wishes, we are of the opinion that the Commonwealth would gain the inherent and possibly unfair advantage of gleaning insight as to the defense strategy.

Furthermore, we are persuaded by the Legislature's plain inclusion of the Commonwealth's right to an independent examination when evidence of mental health at the time of the offense is to be introduced, and its plain exclusion of a similar right when only competency to stand trial is at issue. KRS 504.070 clearly authorizes an examination by the Commonwealth if the defendant gives notice of his intent to introduce evidence of mental illness or insanity at trial. RCr 7.24(3)(B)(i) and (ii) further "authorize a mental examination of the defendant if he gives notice of his intention to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of his guilt." *Coffey, supra,* at 945.

A criminal responsibility evaluation, even if performed by the Commonwealth's examiner, is not a compelled examination as it is initiated by the defendant. By asserting the defense of mental illness or insanity, a defendant is claiming lack of criminal responsibility for the crime. KRS 504.020 provides that "mental illness" and "insanity" exculpate criminal behavior:

(1) A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental illness or retardation, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

Similarly, while a finding that a defendant acted under extreme emotional disturbance does not exculpate criminal behavior, "it is, in fact and principle, a defense against the higher charge" which bears upon the issue of the defendant's guilt. *Coffey, supra.*

The issue of whether a defendant is criminally responsible for the offense with which he is charged is a fact for the jury to decide. Accordingly, the Commonwealth must have the right to rebut this position, a right which necessarily includes obtaining its own independent examination of the defendant. Since the results of the Commonwealth's examination are admissible only to rebut the mental health evidence introduced by the defense, Appellant can preclude introduction of the Commonwealth's evidence by declining to assert such evidence on his own behalf.

We note that other jurisdictions addressing this issue have similarly held that an independent competency examination of the defendant is not available to the prosecution in the absence of statutory authority. In *State v. Zapetis,* 629 So.2d 861, 861–862 (Fla.Dist.Ct.App. 4th Dist.1993), the Florida court held that, "unlike the rule on the insanity defense, the rules governing the determination of the defendant's competency to stand trial do not specifically authorize the State to call its own expert at the competency hearing." *See also State v. Garcia,* 128 N.M. 721, 998 P.2d 186 (App.2000); *State v. Patty,* 563 S.W.2d 911 (Tenn.Crim.App.1977).

For the reasons stated herein, we conclude that the Commonwealth does not have the right to obtain an independent competency evaluation of Appellant. Accordingly, we reverse the decision of the Court of Appeals and grant Appellant's petition for a writ of prohibition.

COOPER, GRAVES, STUMBO and JOHNSTONE, J.J., concur.

KELLER, J., concurs by a separate opinion.

WINTERSHEIMER, J., dissents in a separate opinion in which LAMBERT, C.J., joins.

KELLER, Justice, concurring.

I agree that a writ should issue to prohibit the Appellee trial judge from enforcing his order requiring Appellant to submit to a competency examination conducted by a mental health professional retained by the Commonwealth, and I thus concur in the majority's holding. I write separately, however, because I disagree with the majority's conclusion that it is never proper for a trial court to order an independent competency evaluation by the Commonwealth's expert. In particular, I fear that today's majority opinion's holding that the Commonwealth "does not have the right to an independent competency evaluation,"[1] will, in some cases, erroneously limit the Commonwealth's ability to offer rebuttal expert testimony at competency hearings. In my opinion, CR 35.01, which authorizes a trial court to order a party to submit to a mental examination when the mental condition of the party is in controversy and the moving party demonstrates good cause for the examination, applies to criminal proceedings and will permit a court, in exceptional cases, to order a criminal defendant to submit to a competency evaluation conducted by the Commonwealth's retained mental health professional. In the case at bar, however, I conclude that the Commonwealth's request for an independent evaluation did not demonstrate "good cause" for the order requested, and I thus agree that the trial court erred when it ordered Appellant to submit to the competency evaluation. Accordingly, I concur in the result reached by the majority.

In the outset, I wish to emphasize that the hearing at which a trial court "determine[s] whether or not the defendant is competent to stand trial"[2] is an adversarial proceeding. This Court has held that "[w]hen a hearing is held, it must be an *evidentiary* hearing with the right to examine the witnesses."[3] Although the majority opinion correctly observes that the psychologist or psychiatrist who performed a "neutral"[4] competency evaluation pursuant to a KRS 504.100(1) order is subject to cross-examination at this evidentiary hearing,[5] the appointed examiner's report is only part of the evidence the fact-finder must consider. Parties are entitled to—and, in practice, do—introduce additional evidence for the court's consideration.[6] In

1. *Bishop v. Caudill*, Ky., 118 S.W.3d 159, 165 (2003).

2. KRS 504.100(3).

3. *Gabbard v. Commonwealth*, Ky., 887 S.W.2d 547, 551 (1994). *See also Gardner v. Commonwealth*, Ky., 642 S.W.2d 584, 586 (1982).

4. *Binion v. Commonwealth*, Ky., 891 S.W.2d 383 (1995).

5. KRS 504.080(4) ("The examining psychologist or psychiatrist shall appear at any hearing on the defendant's mental condition unless the defendant waives his right to have him appear").

6. *See Johnson v. Commonwealth*, Ky., 103 S.W.3d 687 (2003) (testimony from KCPC psychiatrist and DPA psychologist); *Fugate v. Commonwealth*, Ky., 62 S.W.3d 15 (2001) (testimony from appointed psychologist, de-

fact, KRS Chapter 504 explicitly recognizes that "[a] psychologist or psychiatrist retained by the defendant shall be permitted to participate in any examination under this chapter." [7] Of course, it goes without saying that a defendant with the financial means to do so can develop additional expert testimony by submitting to an independent competency evaluation by an expert of his or her choice. But, we have held that, in cases where the defendant is indigent: (1) the assistance of a psychological expert is "constitutionally and statutorily required"; [8] and (2) the funds necessary to retain such an expert are a "reasonable and necessary" expense authorized under KRS Chapter 31. [9]

A competency determination has significant consequences for both the defendant and the Commonwealth. If the trial court finds the defendant competent to stand trial, "the court shall continue the proceedings against the defendant," [10] and thus the prosecution goes forward. If the trial court finds that the defendant is not competent to stand trial, but finds "there is a substantial probability that he will attain competency in the foreseeable future," the prosecution is interrupted, and the defendant is subject to a sixty (60) day commitment followed by a subsequent hearing to determine competency. [11] And, if the trial court finds that "there is no substantial probability [the defendant] will attain competency in the foreseeable future," the indictment is typically dismissed without prejudice, [12] and the defendant is subject to an involuntary hospitalization proceeding. [13] An accurate determination as to the defendant's competency to stand trial is thus important because "the effect of a misclassification . . . is either that an incompetent defendant is forced to face trial or that a competent defendant is deprived of his right to a speedy trial and his right to a

fendant's retained expert, defendant's sister, and employees of nursing home where defendant lived); *Jacobs v. Commonwealth*, Ky., 58 S.W.3d 435 (2001) (testimony from KCPC evaluator, defense expert, present and former defense counsel (through ex parte affidavits), and law enforcement and corrections personnel); *Stanford v. Commonwealth*, Ky., 793 S.W.2d 112 (1990) (testimony from defendant's expert, a registered nurse, a psychiatrist, and a psychologist); *Mozee v. Commonwealth*, Ky., 769 S.W.2d 757 (1989) (testimony from defendant's "psychiatrists and psychologists," apparently at least one additional psychiatrist and one additional psychologist, a Corrections Department hearing officer, and the police detectives who took the defendant's statement); *Hopewell v. Commonwealth*, Ky., 641 S.W.2d 744 (1982) (testimony from appointed psychologist (through his report, which was admitted into evidence by stipulation) and defendant himself); *Harston v. Commonwealth*, Ky., 638 S.W.2d 700 (1982) ("contradictory testimony" in the form of dueling experts in addition to police officers, the jailer, and inmates who interacted with defendant); *Edmonds v. Commonwealth*, Ky., 586 S.W.2d 24 (1979) (testimony

from defendant's expert and the psychiatrist appointed by the trial court).

7. KRS 504.080(5).

8. *Crawford v. Commonwealth*, Ky., 824 S.W.2d 847, 850 (1992).

9. See *McCracken County Fiscal Court v. Graves*, Ky., 885 S.W.2d 307, 312 (1994).

10. KRS 504.110(3).

11. KRS 504.110(1).

12. See *Kirk v. Commonwealth*, Ky., 6 S.W.3d 823, 825 (1999) ("The trial judge found Appellant to be incompetent to stand trial and dismissed the indictment."); *Tolley v. Commonwealth*, Ky., 892 S.W.2d 580, 581 (1995); *Commonwealth v. Todd*, Ky.App., 12 S.W.3d 695, 696 (2000).

13. KRS 504.110(2). *See also Schuttemeyer v. Commonwealth*, Ky.App., 793 S.W.2d 124 (1990) (holding that the involuntary commitment proceeding occurs in circuit court).

trial by jury before being incarcerated."[14] Although the most evident risks associated with a "false positive" incompetence finding are decreased efficiency in the criminal justice system and "possible reduction in accuracy due to the erosion of evidence during the delay,"[15] there are opportunity costs for the defendant as well, namely: (1) impairment of the ability to mount a defense as a result of fading memories and absent evidence attributable to the delay; and, in cases where the defendant is mentally ill, but not incompetent, (2) an antitherapeutic effect caused by the "incompetency label" and a lack of incentive for recovery.[16] The majority opinion implicitly recognizes that a fact-finder's decision is better-informed when adversarial parties introduce evidence on both sides of a question,[17] but the majority apparently overlooks *the trial court's* fact-finding role with respect to competency determinations when it hamstrings the Commonwealth's ability to offer expert testimony at competency hearings.

The majority's conclusion follows, in large part, from its observation that KRS Chapter 504 does not contain explicit au-

thorization for the Commonwealth's "right to an independent examination ... when only competency to stand trial is at issue."[18] Although I agree that this lack of explicit statutory authorization supports the conclusion that the Commonwealth is not entitled to an independent competency evaluation as a matter of course, I disagree with the majority's suggestion that the statutory vacuum forecloses the Commonwealth from seeking authorization for an independent examination. After all, although KRS Chapter 504 does not explicitly authorize an independent evaluation by the Commonwealth, "there is also no prohibition,"[19] and KRS 504.100 permits the trial court to order examinations by more than one (1) mental health professional.[20] In addition, the need to develop expert evidence for the adversarial hearing contemplated by KRS 504.100 casts doubt upon the majority's conclusion that the lack of explicit statutory authorization should be interpreted as a prohibition:

Considering that a party that wished to dispute the opinion of a court-appointed expert would be unable to do so

---

**14.** Claudine Walker Ausness, Note: *The Identification of Incompetent Defendants: Separating Those Unfit for Adversary Combat from Those Who Are Fit,* 66 KY. L.J. 666, 679 (1977–78).

**15.** *Id.*

**16.** *Id.* at 679–680.

**17.** *Bishop v. Caudill, supra* at 164 ("The issue of whether a defendant is criminally responsible for the offense with which he is charged is an issue of fact for the jury to decide. Accordingly, the Commonwealth must have the right to rebut this position, a right which necessarily includes obtaining its own independent examination of the defendant.").

**18.** *Id.* at 164.

**19.** *State v. Garcia,* 128 N.M. 721, 998 P.2d 186, 191 (Ct.App.2000). Although the majority opinion cites this case in support of its

statement that "other jurisdictions addressing this issue have similarly held that an independent competency examination of the defendant is not available to the prosecution in the absence of statutory authority," *Bishop v. Caudill, supra* at 164, the New Mexico Court of Appeals actually held that, despite the lack of statutory authority for an independent examination, trial courts have the authority to do so "for good cause shown," and trial courts' decisions in this regard are reviewed for abuse of discretion. *State v. Garcia, supra* at 192.

**20.** *See* KRS 504.100(1) ("[T]he court shall appoint *at least* one (1) psychologist or psychiatrist to examine, treat and report on the defendant's mental condition." (emphasis added)); KRS 504.100(4) ("After the filing of the report *(or reports )....*" (emphasis added)).

effectively without the use of its own expert, the absence of an express statutory restriction on the use of such experts renders it highly implausible that the Legislature intended any such restriction. . . . It is hard to imagine that the Legislature intended . . . to permit the defense to deny the prosecution's experts access to the individual whose competence is at issue, so that they could not credibly dispute the opinions of defense experts given full access to that person. The failure of section 1369 to explicitly authorize equal access cannot easily be construed as reflecting an intention to enable a defendant to deny it, because that would unfairly obstruct the truth-finding process.[21]

If the psychiatrist or psychologist appointed by the Court determines that the defendant is competent to stand trial, the Commonwealth can, of course, subpoena that expert to rebut defense-retained expert testimony to the contrary.[22] However, in cases where the appointed examiner

will testify that the defendant is not competent to stand trial, today's majority opinion restricts, if not practically forecloses, the Commonwealth's ability to rebut that testimony with its own expert testimony. And, if the defendant introduces additional testimony from a retained expert, the Commonwealth's ability to perform its adversarial role will be even further compromised.

It is my view that, if the Commonwealth can demonstrate "good cause," [23] it should be permitted to seek an independent competency evaluation under CR 35.01, which provides:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician, dentist or appropriate health care expert, or to produce

---

21. *Baqleh v. Superior Court of San Francisco*, 100 Cal.App.4th 478, 122 Cal.Rptr.2d 673, 682 (2002) (hereinafter *"Baqleh v. Superior Court "*).

22. *See Jacobs v. Commonwealth, supra* note 6 at 439.

23. *Cf.* Model Penal Code and Commentaries, Part I, § 4.05, cmt. 2, n. 1 (A.L.I.1985) ("Because of the possibility that [the] defendant might reveal damaging information other than that directly relevant to his mental condition, it has been suggested that there should be a requirement of a showing of good cause where the prosecution seeks to have defendant examined."). By way of example, "good cause" might consist of evidence that the court-appointed examiner: (1) is incompetent or biased, *see Baqleh v. Superior Court, supra* note 21 at 677 (in which the state's motion requesting an independent evaluation argued that expert testimony from a psychiatrist was necessary because the defendant allegedly suffered from both developmental disabilities and mental illness); *State v. Zapetis*, 629 So.2d 861 (Fla.Dist.Ct.App.1993) ("The State's motion for access to the respondent to permit examination by its own expert was denied without prejudice to renew it if it later appeared that one of the [appointed] experts had relied upon the findings of another expert instead of conducting an independent examination, or if the defense expert acted as an advocate rather than as an independent examiner."); (2) performed insufficient or incomplete testing of the defendant; (3) overlooked relevant evidence, *see United States v. Weston*, 36 F.Supp.2d 7, 13 (D.D.C.1999) ("[T]he government stated that it was dissatisfied with Dr. Johnson's report because, *inter alia,* she failed to discuss that the defendant filed over half a dozen civil lawsuits in Montana and Illinois between 1984 and 1986"); or (4) misapplied the statutory standard, *see State v. Garcia, supra* note 19 at 724, 998 P.2d 186. The Commonwealth could supply such evidence in the form of an affidavit from an expert retained by the Commonwealth to review the findings of the psychiatrist or psychologist appointed by the Court.

for examination the person in his custody or legal control. *The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.*[24]

Although this Court has never held that CR 35.01 applies to criminal proceedings, we have considered whether CR 35.01 permits a criminal defendant to obtain access to prosecution witnesses for the purposes of mental and physical examinations, and have held that CR 35.01 did not authorize the examinations requested because the witnesses in question were not covered by the rule.[25] Significantly, in none of those cases did the Court hold that CR 35.01 was inapplicable to criminal proceedings. RCr 13.04 provides that "[t]he Rules of Civil Procedure shall be applicable to criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure."[26] Nothing in the Rules of Criminal Procedure prohibits an independent competency evaluation by the Commonwealth, and CR 35.01 is thus complementary to, rather than inconsistent

with, the criminal rules. Accordingly, if the Commonwealth can demonstrate "good cause," it should be permitted to obtain access to the defendant for the purpose of having its retained expert conduct a competency evaluation.

The protections available to a defendant who is ordered to submit to a CR 35.01 examination should allay many of the other concerns expressed in the majority opinion. Specifically, a defendant can seek a protective order if he or she believes that the examiner designated by the Commonwealth constitutes a "stalking horse" whose "examination" will be more akin to a deposition.[27] And, if the defendant can demonstrate "good cause"[28] the trial court "may impose an external presence at a CR 35.01 examination."[29] Although KRE 507 provides only a limited privilege for statements made by the defendant in the course of such an examination,[30] the defendant will already have been interviewed by at least one (1)—and likely more than one (1)—competency examiner prior to the CR 35.01 examination with the Commonwealth's designee. Thus, any risk that the Commonwealth's independent examination would yield additional substantive evidence against the defendant is negligible. Final-

---

24. CR 35.01 (underlining added).

25. *Bart v. Commonwealth*, Ky., 951 S.W.2d 576, 578 (1997); *Mack v. Commonwealth*, Ky., 860 S.W.2d 275, 277 (1993); *Turner v. Commonwealth*, Ky., 767 S.W.2d 557, 559 (1989) ("CR 35.01 provides that when the mental or physical condition of a party or person in the control of a party, is in controversy, the court may order a physical examination. The Commonwealth points out that this rule is not expressly applicable to this case because the four-year-old child is not a party nor is she under the control of a party.").

26. RCr 13.04.

27. *See Sexton v. Bates*, Ky.App., 41 S.W.3d 452, 457 (2001) ("[W]hile a trial court has the

authority under CR 35.01 to appoint a physician to perform an IME, and even to appoint one other than selected by [the opposing party], it may do so only upon a valid and substantiated objection regarding the physician's qualifications or record, not upon a mere conclusory assertion discrediting the selection.").

28. In cases involving an independent competency evaluation ordered under CR 35.01, however, KRS 504.080(5) may make the "good cause" showing superfluous.

29. *Metropolitan Property & Cas. Ins. Co. v. Overstreet*, Ky., 103 S.W.3d 31, 38 (2003).

30. *See Myers v. Commonwealth*, Ky., 87 S.W.3d 243 (2002).

ly, I recognize that a compelled competency examination implicates a defendant's Fifth Amendment right against self-incrimination.[31] However, the United States Supreme Court has held that, if a defendant refuses to answer a competency examiner's questions after being warned of his or her right to remain silent and that any statements made could be used against him or her, "the validly ordered competency evaluation nevertheless could [ ] proceed[ ] upon the condition that the results would be applied solely for that purpose. In such circumstances, the proper conduct and use of competency ... examinations are not frustrated."[32] If the Commonwealth's examiner is unable or unwilling to continue the examination under such limitations, and the defendant subsequently is found incompetent to stand trial, the trial court could accommodate the Commonwealth's CR 35.01 request by permitting the Commonwealth's retained expert to participate in any future examination ordered by the Court.

In the case at bar, the Commonwealth's request for an independent competency evaluation simply referenced the trial court's earlier ruling "which gave the Commonwealth 10 days to make an indication of whether or not the Commonwealth wished to have their own independent evaluation performed on the Defendant for competency purposes." This did not demonstrate "good cause" for an independent evaluation, and the trial court erred when it ordered Appellant to submit to the examination. Accordingly, I concur in the result reached by the majority.

**WINTERSHEIMER, Justice, dissenting.**

I must respectfully dissent from the majority opinion because the circuit judge did not abuse his discretion by ordering Bishop to undergo a mental evaluation requested by the prosecution in order to determine his competency to stand trial in addition to the evaluation by the Kentucky Correctional Psychiatric Center previously ordered. In this case, Bishop is not entitled to a writ of prohibition because he has an adequate remedy by appeal.

I share many of the concerns expressed so well by Justice Keller in his concurring opinion. I agree with him that the conclusion that it is never proper for a trial judge to order an independent competency evaluation by an expert for the Commonwealth is flawed. The conclusion by the majority that the Commonwealth does not have the right to an independent competency evaluation could in some cases erroneously limit the Commonwealth's ability to offer rebuttal expert testimony at competency hearings. CR 35.01 authorizes a trial judge to order a party to submit to a mental examination when the mental condition of the party is in controversy and the moving party demonstrates good cause for the examination. The rule is available in criminal proceedings and would permit a court, in exceptional cases, to order a criminal defendant to submit to a competency evaluation conducted by the Commonwealth's expert. In this case, the Commonwealth demonstrated sufficient good cause for the evaluation requested.

---

31. U.S. CONST. amend. V ("No person ... shall be compelled in any criminal case to be a witness against himself[.] "). *See also Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

32. *Estelle v. Smith, supra* note 31 at 451 U.S. 454, 468, 101 S.Ct. 1866, 1876, 68 L.Ed.2d

359, 372. *See also Baqleh v. Superior Court, supra* note 21 at 690 ("Stating the proposition differently, the *[Estelle]* court made it clear that if the information obtained by the psychiatrist during the inquiry into competency 'had been confined to serving that function, no Fifth Amendment issue would have arisen.' ").

KRS 504.100 provides in pertinent part as follows:

(1) If, upon arraignment, or during any stage of the proceedings, the Court has reasonable grounds to believe the defendant is incompetent to stand trial, the court shall appoint at least one (1) psychologist, or psychiatrist, to examine, treat and report on the defendant's mental condition.

A competency determination has significant consequences for both the defendant and the Commonwealth. The evidentiary hearing at which a trial judge determines the competency of the defendant to stand trial is an adversarial proceeding. *Cf. Gabbard v. Commonwealth,* Ky., 887 S.W.2d 547 (1994). The appointed examiner's report is only one part of the evidence the factfinder must consider. Parties are entitled to, and in many cases do, introduce additional evidence for the court's consideration. *See Johnson v. Commonwealth,* Ky., 103 S.W.3d 687 (2003). The absence of explicit statutory language does not support the conclusion that the Commonwealth is prevented from seeking authorization for an independent examination. If the Commonwealth can demonstrate good cause, it should be permitted to seek an independent competency evaluation pursuant to CR 35.01.

I would deny the petition for a writ of prohibition.

LAMBERT, C.J., joins this dissent.