Darnell HOPEWELL, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Nov. 23, 1982.

Jack E. Farley, Public Advocate, Edward C. Monahan, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Linda Carnes Wimberly, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

Appellant Darnell Hopewell, on January 26, 1982, was indicted by the Grand Jury of Boone County, Kentucky, for the offense of robbery in the first degree (KRS 515.020) and for the offense of kidnapping (KRS 509.040). He was convicted on both offenses and sentenced to a total of 35 years in the penitentiary.

During the wee hours of the morning of December 31, 1981, appellant was driving a 1977 Buick in Boone County, Kentucky, with Harold Taylor as a passenger. He stopped at an Amoco service station at the intersection of Highway 338 and I–75 to get some gas and oil. After servicing the car, the attendant, James Virgil Perry, entered the office where he was confronted by Harold Taylor holding a pistol pointed at him. Taylor ordered Perry to give him his money and to lie down in the back of the office. Upon departing, appellant ordered Perry to go with them and to lie down in the back of the car while Taylor tied his hands. The appellant drove south on I–75 to the Crittenden exit, a distance of approximately 20 miles, where Perry was blindfolded and put out of the car. Perry thereafter was able to loosen his bonds and the blindfold and call the police. He described the robbers and the car in which they were traveling. Appellant and Taylor were apprehended driving south on I–75 and asked by the police to follow them back to the service station, which they voluntarily did. Appellant was questioned twice on December 31, 1981, and at about 1:00 p.m. gave the police a statement wherein he admitted the robbery. Taylor was indicted separately for the same offense. While in jail Taylor stated to the Boone County jailer "... that Darnell didn't know anything about the robbery, that he had pulled up to the ser-

vice station and Taylor went in and came back out with the guy and Darnell didn't know about it."

On appellant's trial his counsel called the jailer to testify. During the course of the interrogation, appellant's counsel asked whether Taylor made any statement to the jailer concerning Hopewell's involvement in the robbery. The Commonwealth objected to the question on the ground that it was hearsay. After an in-chambers conference, the court sustained the objection and did not permit the jailer to answer the question. However, the propriety of the question was placed in the record by avowal.

On this appeal two issues are raised.

I. "The trial court erred by preventing appellant from introducing a statement of the codefendant that appellant was not culpable for the charged offenses."

The purpose for which counsel for appellant sought to introduce this question and secure an answer is stated by him to be "... the statement is not being offered to show whether or not it is true that Darnell had anything to do with it. The only reason the statement is being offered is to show the fact that it was made." In his brief to this court, however, the appellant charges that "(t)he failure of the trial court to allow appellant's counsel to introduce the statement of Taylor made to the jailer denied appellant his right to present a defense in violation of fourteenth amendment due process."

It is evident that counsel for appellant has changed his approach to the admissibility of the statement. He raised no question before the trial judge that this statement was anything other than testimony without indicia of reliability; not a defense to the charges, or either of them, made against appellant. In *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1977), this court stated: "The appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." In *Daugherty v. Commonwealth*, Ky., 572 S.W.2d 861 (1978), in discussing preservation for appellate review, we said: "Regardless of the merits of this argument, these grounds, being different from those asserted in the court below, are not properly preserved for appellate review."

It appears that the error, if any, was not preserved for appellate review.

II. "The boilerplate competency 'hearing' afforded appellant denied him due process of law and effective assistance of counsel."

The question of the capacity of the appellant to stand trial was brought to the attention of the trial court. RCr 8.06, dealing with insanity, provides:

"If upon arraignment or during the proceedings there are reasonable grounds to believe that the defendant lacks capacity to appreciate the nature and consequences of the proceedings against him or to participate rationally in his defense, the proceedings shall be postponed and the issue of incapacity determined as provided by KRS 504.040."

KRS 504.040, to which RCr 8.06 makes reference, provides for referring a defendant to a medical facility for the purpose of an evaluation and report upon the competence of the defendant. This the trial court did. On February 3, 1982, the trial court entered two orders as follows:

"By agreement between defendant and Commonwealth made in open court in the presence of defendant, it is ordered that defendant is referred to Comprehensive Care for evaluation of mental state.

The above styled action is ordered set for trial/hearing in the Circuit Court of Boone County on 2/22/82 at 10:00 a.m. Defendant's motion to reduce bond is hereby overruled."

"Defendant and his attorney having this date appeared in open court for arraignment; counsel for defendant and the Commonwealth attorney having agreed that the defendant's competency to stand trial should be determined,

IT IS ORDERED AND ADJUDGED that the defendant is hereby referred to

Comprehensive Care Center for examination of his present mental condition by a staff psychiatrist or psychologist for expert opinion on the following issues:

1) Whether the defendant, as a result of mental disease, lacks capacity to appreciate the nature and consequences of the proceedings against him, and

2) Whether the defendant can participate rationally in his own defense.

The examining psychiatrist or psychologist shall report to the Court."

On February 19, 1982, the report of Michael G. Downer, M.S., a certified clinical psychologist from the Florence, Kentucky, Comprehensive Care Center, was filed with the trial court. The report states:

"In regard to the questions asked by the court, it is my impression that this individual is able to appreciate the nature of the crime he is accused of and is able to understand the legal proceedings against him. Also, for the most part this individual should be able to rationally participate in his own defense. However, there are two areas where he has mildly impaired ability. One concerns the quality of relating to an attorney. This man has had one or two contacts with public defenders regarding this case, and was very negative in describing what transpired. He seems to think that they are disinterested in defending him unless he has money and generally are not highly motivated to listen to his story. The second area of mildly impaired ability concerns planning of legal strategy. The client mentioned that in his previous meetings with the public defenders there was mention of plea bargaining to a lesser charge. Darnell is very much against such a plan since he claims he was mainly coerced and thus not directly responsible. With such a strong attitude, certain planning along such lines can be considered in jeopardy.

In regard to other areas concerning competency, this individual demonstrated adequate awareness of his available legal defenses, is aware of the role of various court involved people, understands court procedure, is aware of the charges against him and the possible penalties, should be able to challenge prosecution witnesses, is able to testify relevantly, and is highly motivated to be defended against the charges."

The trial court ordered an evidentiary hearing on the issue of appellant's capacity to stand trial. On February 2, 1982, such a hearing was held in open court. Appellant and his counsel, Charles Moore, were present and participating, as was counsel for the Commonwealth. The pertinent dialogue was as follows:

"THE COURT: Gentlemen, we are here for a hearing on Mr. Hopewell's competency to stand trial. The record shows that Court entered an Order February 3, of this year, referring Mr. Hopewell for psychiatric or psychological examination by experts at Comprehensive Care Center and a report has been filed with the Court and it is signed by Michael G. Downer, Certified Clinical Psychologist.

Let me ask Counsel, have you both seen the report, gentlemen?

MR. MOORE: We have, Your Honor—

MR. DALLAS: The Commonwealth has, Your Honor.

THE COURT: Alright.

MR. DALLAS: Your Honor, I believe from my conversation with Defense Counsel, we will stipulate that particular report into evidence and let the Court make its decision on that particular report from that Clinical Psychologist relative to his competency to stand trial.

THE COURT: Alright, you had subpoenaed the doctor to appear based on an agreement that you had with Counsel?

MR. MOORE: That is correct Your Honor.

THE COURT: It is my understanding, gentlemen, that you agree—let's mark this Court's Exhibit A, that is the report from the Comprehensive Care Center signed by Doctor Downer. We will mark the Report Exhibit A and let it be filed in the record and let me

make sure that I understand that Counsel agree that the report is authentic and may be filed in the record as substantive evidence on the issue of Mr. Hopewell's competency to stand trial, is that correct, gentlemen?

MR. MOORE: That is correct, Your Honor. The stipulation is with regard to authenticity of the report.

THE COURT: And that it may be introduced and considered by the Court on the issues in this hearing.

MR. MOORE: That is correct, Your Honor.

THE COURT: The issue being Mr. Hopewell's competency to stand trial.

MR. MOORE: That is correct.

THE COURT: Alright, anything further from the Commonwealth?

MR. DALLAS: No, Your Honor.

THE COURT: On that issue then, Mr. Moore, do you have anything by way of evidence that you care to present?

MR. MOORE: Your Honor, the only thing I would like to do at this time is, I have a couple of questions for Darnell that I would like to ask him and make it a part of the record in this proceeding.

\* \* \* \* \* \*

TESTIMONY OF MR. DARNELL HOPEWELL

BY MR. MOORE:

Q. Darnell, would you state your name for the record, please?

A. Darnell Hopewell.

Q. Darnell, you realize the nature of the charges against you in this action?

A. Yes, I do.

Q. And you are currently being held on two charges, one of which is robbery in the first degree and the other which is kidnapping in the first degree?

A. Yeah, I guess.

Q. Have I told you that?

A. Yes.

Q. And do you understand that for each of those offenses it is not less than ten nor more than twenty years in the state penitentiary, if you are convicted?

A. Yes.

Q. Do you feel as if you are able to communicate with me and participate in preparing your defense to those charges?

A. Yes, I do.

MR. MOORE: I don't have anything else, Judge. Mr. Dallas, do you have any questions?

MR. DALLAS: No.

MR. MOORE: Judge, the only thing I would say, with regard to the report, the one objection that the defense would make relates to the last page, I believe it is page No. 3, in the second paragraph where Mr. Downer states, and I quote: 'also, for the most part, this individual should be able to rationally participate in his own defense,' and based on that, for the most part, I don't know if he is indicating that through certain stages of the trial Mr. Hopewell could participate and in others he could not, or this is just his overall opinion. But, based upon that one particular section, we would file the objection for the purposes of the record.

THE COURT: Alright, if I understand correctly, what you are saying is—your conclusion is that the report is inclusive.

MR. MOORE: That is correct.

THE COURT: Alright, I understand what you are saying. Okay, anything further, gentlemen?

MR. DALLAS: No, Your Honor.

MR. MOORE: No.

THE COURT: Okay, let the record show the hearing was held this date, and based on the evidence that was submitted to the Court, the Court finds that Mr. Hopewell has substantial capacity to understand the nature and consequences of the proceedings against him, and is capable of assisting Counsel and participating rationally in his own defense.

It is the Court's conclusion and Order that Mr. Hopewell is competent to stand trial, and gentlemen, the trial has

been scheduled, as you know, for some time now, this coming Monday, at 9:00 A.M."

The parties having concluded the presentation of evidence on appellant's capacity to stand trial, the court proceeded with the trial of both counts of the indictment.

■ The trial court has a broad discretion in determining whether a defendant has the ability to participate rationally in his defense. The record reflects that the court did not abuse its discretion in holding the appellant competent to stand trial.

■ Appellant interjects the argument that he was not rendered reasonably competent assistance of counsel and that, by reason thereof, his conviction should be reversed. This issue was not presented to the trial court. It was raised for the first time in appellant's brief. The issue of insufficient assistance of counsel must be raised at the trial level by means of a post trial motion. *Wilson v. Commonwealth,* Ky., 601 S.W.2d 280 (1980).

The judgment of the Boone Circuit Court is affirmed.

All concur.