**COMMONWEALTH of Kentucky, Appellant,**

v.

**Deanna Gayle WOOTEN, Appellee.**

**No. 2006–SC–000125–DG.**

Supreme Court of Kentucky.

Nov. 26, 2008.

Jack Conway, Attorney General, Matthew Robert Krygiel, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellant.

Damon Loyd Preston, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCHRODER.

This is an appeal by the Commonwealth from orders of the Bracken Circuit Court relative to the court's determination that Deanna Wooten was incompetent to stand trial on two counts of first-degree criminal abuse. We reject the Commonwealth's arguments that the trial court erred in allowing funding for an independent defense expert for evaluation of Deanna's competency, in allowing that expert to testify at the competency hearing, and in denying a motion for a more specific report by that expert. In light of the evidence that Deanna could not participate rationally in her own defense, we also adjudge that the trial court did not abuse its discretion in finding Deanna incompetent to stand trial. Hence, we affirm.

On January 24, 2003, Appellant, Deanna Wooten was indicted on two counts of first-degree criminal abuse for allowing her live-in boyfriend, Anthony Winkle, to abuse her two children. Wooten pled not guilty at her arraignment in January 2003, and on March 31, 2003, the trial court entered an order for reciprocal discovery. At a status hearing on July 10, 2003, Deanna's counsel requested that Deanna be evaluated by Kentucky Correctional Psychiatric Center (KCPC), but made clear that she was concerned about the limited testing the appointed evaluator would employ. The court granted the motion and directed Deanna's counsel to draft an order for the evaluation. No such order appears in the record.

At some point thereafter, Deanna made an ex parte motion for state funding for a mental health expert. Specifically, the motion stated that Deanna sought to retain the services of Dr. Peggy Pack "for mental evaluations for purposes of possible guilt and innocence defenses and mitigation." On September 20, 2003, the court entered a sealed order ordering defense counsel to provide authority for holding an ex parte hearing on the motion. Deanna's attorney thereafter filed a response citing KRS 31.185(2) as authority for the motion. On March 11, 2004, apparently without holding a hearing on the motion, the court entered an ex parte order authorizing the funding for an expert witness and set the matter for trial on November 3, 2004.

During a status conference on June 10, 2004, Deanna's counsel revealed that a sealed order in the record authorized funds for a private expert. The Commonwealth stated that an indigent defendant is first required to use state facilities before getting funds for a private expert, and that the proper procedure had not been followed. However, the Commonwealth made no formal objection, nor asked for any relief.

On July 22, 2004, Deanna's counsel provided a copy of Dr. Pack's report to the Commonwealth and gave notice of their

intent to introduce evidence of Deanna's mental retardation at the time of the offense. Dr. Pack's report solely addressed the competency issue, but did not state a definitive opinion as to whether or not Deanna was competent to stand trial. Eight days later, the Commonwealth made a motion that Deanna be required to submit to a mental health examination at KCPC and that Dr. Pack be required to provide a more specific report. On September 2, 2004, the court granted the request for the KCPC examination, but denied the motion for a more specific report.

A competency hearing was held on October 18, 2004. The court heard testimony from Dr. Peggy Pack and Dr. Barbara Jefferson, who evaluated Deanna for KCPC.

Dr. Pack testified that Deanna's verbal IQ was 66, her performance IQ was 74, and her overall IQ was 66. Based on these scores, Dr. Pack diagnosed Deanna as being mentally retarded. Dr. Pack testified that Deanna's problems processing new information would make it difficult for her to assist her attorney in legal proceedings. Initially Dr. Pack did not want to state an opinion as to Deanna's competency during the hearing, but eventually, when pressed, she testified that Deanna was "at the marginal line of competency." Dr. Pack qualified her response, stating that for Deanna to be competent to stand trial, she would need a great deal of support during the proceedings.

Dr. Jefferson agreed with Dr. Pack that Deanna was mildly retarded. While Dr. Jefferson testified that Deanna was competent to stand trial, she noted that Deanna has a limited ability to understand new information. Dr. Jefferson stated for Deanna to go to trial, trial language would have to be simplified, the trial would have to move at a slower pace, attorneys would have to be patient, and the pressure placed on Deanna should be limited.

In an order entered on October 19, 2004, the court determined that Deanna was incompetent to stand trial. The court reasoned as follows:

While the defendant has the capacity to understand the nature and consequences of the proceedings if the proceedings are carefully explained in the simplest terms, she, by virtue of limited ability to process new information, does not have the ability to assist her counsel at trial in her own defense. Defense counsel may have the luxury of explaining in detail the preliminary steps and procedures leading up to trial, but in the trial itself, if the defendant cannot mentally process and respond to the testimony and other trial events, it is clear that she cannot effectively or rationally assist her counsel during the most important phase of the prosecution. For these reasons, the defendant is incompetent to stand trial.

The Commonwealth appealed to the Court of Appeals from the order granting Deanna's ex parte motion for expert funding, the order denying the Commonwealth's motion to require Dr. Pack to give a more specific report, and the court's order determining that Deanna was incompetent to stand trial. The Court of Appeals agreed with the Commonwealth that KRS 31.185 does not authorize funds for a defense expert on the issue of competence to stand trial, and that under the applicable statute, KRS 504.100, neither the defense nor the prosecution is entitled to an independent evaluation on competency to stand trial. The Court of Appeals also agreed with the Commonwealth that the trial court abused its discretion in granting the ex parte motion for expert funding because the defense failed to demonstrate that the use of state facilities would be

impractical or that a private expert was reasonably necessary, a precondition to funding under KRS 31.185. However, the Court of Appeals adjudged the resulting error to be harmless, reasoning that KRS 504.100 did not prohibit consideration of the expert testimony once it was available, even though it was erroneously obtained. As to the failure to require Dr. Pack to provide a more specific report, the Court of Appeals ruled there was no error because the statutes do not require the expert to give a specific opinion. The Court of Appeals also noted that even if it was error to not give a specific opinion in the report, any variance between Dr. Pack's report and her testimony leaned in the Commonwealth's favor when she testified at the hearing that Deanna was marginally competent. Finally, in light of the evidence of Deanna's substantial intellectual limitations and special needs, the Court of Appeals ruled that the lower court did not abuse its discretion in finding Deanna to be incompetent to stand trial.

This Court accepted review to address the issues regarding funding for mental health experts and the court's ruling that Deanna was not competent to stand trial.

### FUNDING FOR DR. PACK

■ The Commonwealth argues that it was error for the trial court to grant the ex parte order authorizing funding for Dr. Pack and that the Court of Appeals erred in finding such error was harmless in this case. The Commonwealth relies heavily on this Court's decision in *Bishop v. Caudill*, 118 S.W.3d 159, 163 (Ky.2003), wherein we held that the Commonwealth is not entitled to an independent evaluation of the defendant's competency to stand trial under KRS 504.100. The Court of Appeals in the instant case extended that holding to the defense, stating "[n]othing in the statute authorizes independent eval-

uations by either the Commonwealth or the defendant." We do not believe the holding in *Bishop* is to be extended to the defense and that the Court of Appeals erred in so ruling.

The *Bishop* Court distinguished between the functions of mental health experts for determinations relative to the defense of mental illness or insanity (KRS 504.070) and for determinations of competency (KRS 504.100). *Id.* at 161–63. KRS 504.100(1) provides:

> If upon arraignment, or during any stage of the proceedings, the court has reasonable grounds to believe the defendant is incompetent to stand trial, the court shall appoint at least one (1) psychologist or psychiatrist to examine, treat and report on the defendant's mental condition.

While the *Bishop* Court recognized that a competency examiner appointed under KRS 504.100(1) "is working for the court, not necessarily the defense or the Commonwealth," the Court was not faced with the issue of funding for an independent competency evaluation for the defense, only the Commonwealth. *Id.* at 163 (internal citation omitted). And indeed the Court's entire policy rationale in *Bishop* for not allowing the Commonwealth an independent competency evaluation—the risk of disclosure of other evidence, conduct or defense strategy not otherwise accessible to the prosecution—would not be applicable in the case of an independent competency evaluation for the defense. *Id.* at 163–64. "A competency determination has significant consequences for both the defendant and the Commonwealth." *Id.* at 166 (concurring opinion, Justice Keller). As observed in Justice Keller's concurring opinion in *Bishop*:

> Although ... the psychologist or psychiatrist who performed a neutral competency evaluation pursuant to a KRS

504.100(1) order is subject to cross-examination at this evidentiary hearing, the appointed examiner's report is only part of the evidence the factfinder must consider. Parties are entitled to—and, in practice, do—introduce additional evidence for the court's consideration. In fact, KRS Chapter 504 explicitly recognizes that "[a] psychologist or psychiatrist retained by the defendant shall be permitted to participate in any examination under this chapter." [KRS 504.080(5)]. Of course, it goes without saying that a defendant with the financial means to do so can develop additional expert testimony by submitting to an independent competency evaluation by an expert of his or her choice. But, we have held that, in cases where the defendant is indigent: (1) the assistance of a psychological expert is constitutionally and statutorily required; and (2) the funds necessary to retain such an expert are a reasonable and necessary expense authorized under KRS Chapter 31.

*Id.* at 165–166 (internal citations and quotations omitted).

In *Crawford v. Commonwealth*, 824 S.W.2d 847 (Ky.1992), the defendant sought funds for a second independent competency examination. This Court held that while the defendant is entitled to an independent expert to evaluate his mental state and his competency to stand trial, he is not entitled to an additional state-provided examination or funds to hire additional experts simply because the initial evaluation was contrary to his defense. *Id.* at 850 (citing *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)).

Although we adjudge it was not per se error for the lower court to authorize funding for an independent competency examination for Deanna in the instant case, there is still the issue of whether it was error to authorize the funding if there was no determination of whether the use of a private expert was reasonably necessary pursuant to KRS 31.110, or that state facilities were unavailable or would be impractical pursuant to KRS 31.185(1). Additionally, there is the question of whether it was error to authorize the funding for a competency expert when Deanna's counsel represented it was to be for mental evaluations for guilt and innocence defenses and mitigation.

■ In order to hire a state-funded private psychologist, the defendant must make the requisite showing that the state facilities were unavailable or that the use of state facilities would be impractical. *Commonwealth v. Paisley*, 201 S.W.3d 34, 36 (Ky.2006); *Binion v. Commonwealth*, 891 S.W.2d 383, 385 (Ky.1995); KRS 31.185(1). The defendant must also demonstrate that the desired expert assistance is "reasonably necessary." *Crawford*, 824 S.W.2d at 850 (citing *Young v. Commonwealth*, 585 S.W.2d 378 (Ky.1979)). Because the order for funding was obtained ex parte in this case, the record is not clear whether a hearing was held on the reasonable necessity of a private expert or the impracticality or unavailability of state facilities. The record does not reflect that such a hearing was held. However, the ex parte order authorizing the employment of Dr. Peggy Pack states:

> A reasonable necessity has been shown for the defendant herein to employ the services of DR. PEGGY PACK as a forensic psychologist.
>
> There are no state facilities nor personnel available whom defense counsel could utilize to obtain this assistance, which is necessary to provide the defendant with a fair trial under both state and federal constitutional law.

Given the court's findings above, we must presume that Deanna made a sufficient

showing of unavailability of state services and of reasonable necessity for the hiring of Dr. Pack to support the trial court's order. *See Hamblin v. Johnson,* 254 S.W.2d 76, 77 (Ky.1952).

We next turn to the Commonwealth's assertion that because the initial representation in Deanna's ex parte motion was that it was for a mental evaluation for guilt and innocence defenses and mitigation, when, in fact, it was for a competency evaluation, the order authorizing the funding was entered in error. As we have ruled above that an indigent defendant is entitled to an independent expert for purposes of determining competency under a proper showing of necessity and unavailability/impracticality of state services, we deem any error to be harmless. RCr 9.24.

### FAILURE TO FILE A MORE SPECIFIC REPORT

The Commonwealth argues that the trial court erred when it denied its motion to require Dr. Pack to file a more specific report stating a definitive conclusion about Deanna's competency to stand trial. The motion alternatively asked for exclusion of any testimony or opinion by Dr. Pack at the competency hearing if she failed to give a specific opinion about Deanna's competency in her report. The Commonwealth claims that it was prejudiced at trial by Dr. Pack's conclusion that Deanna was "marginally competent" when such conclusion was not previously disclosed in her report.

The trial court makes the ultimate determination of whether a defendant is competent to stand trial. To aid the court in making this determination, KRS 504.100(1) requires the court to appoint at least one psychologist or psychiatrist to examine and report on the defendant's mental condition. KRS 504.100(2) provides:

(2) The report of the psychologist or psychiatrist shall state whether or not he finds the defendant incompetent to stand trial. If he finds the defendant is incompetent, the report shall state:

(a) Whether there is a substantial probability of his attaining competency in the foreseeable future; and

(b) What type treatment and what type treatment facility the examiner recommends.

■ We would agree that the language of subsection (2) requires a specific finding of competency. However, in reading the statute as a whole, we believe the requirements of specificity in subsection (2) apply only to the report of the court-appointed neutral expert, and not to the defendant's independent expert. The language of subsection (2) is clearly in reference to the court-appointed psychologist or psychiatrist in subsection (1), and applies to the report from that examiner, who is working for the court and not the defense or the prosecution. *Bishop,* 118 S.W.3d at 163. Hence, the lower court did not err in denying the motion for a more specific report by Dr. Pack.

As to the Commonwealth's claim of unfair surprise at trial by Dr. Pack's conclusion, it must be noted that the Commonwealth did not object to Dr. Pack's testimony at the competency hearing. RCr 9.22. Further, the Commonwealth had an opportunity to cross-examine Dr. Pack at the competency hearing. In reviewing the twelve-page report of Dr. Pack, while it did not reach a definitive conclusion about Deanna's competency, it was replete with statements about her cognitive impairments and repeatedly questioned her intellectual abilities and competency to stand trial. From our reading of Dr. Pack's report, we do not see how the Commonwealth could claim

surprise at Dr. Pack's testimony that Deanna was marginally competent.

### COMPETENCY RULING

The Commonwealth's final argument is that the trial court erred in finding that Deanna was not competent to stand trial when both mental health experts opined that she was competent. " 'Incompetency to stand trial' means, as a result of mental condition, lack of capacity to appreciate the nature and consequences of the proceedings against one or to participate rationally in one's own defense." KRS 504.060(4).

> [A] defendant is competent if he can "consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." ... [A] competent defendant can make a "reasoned choice" among the alternatives available to him when confronted with such crucial questions as whether he should testify, waive a jury trial, cross-examine witnesses, put on a defense, etc.

*Bishop*, 118 S.W.3d at 162–63 (quoting *Godinez v. Moran*, 509 U.S. 389, 396–98, 113 S.Ct. 2680, 2685–86, 125 L.Ed.2d 321 (1993)). The nature of the inquiry in a competency proceeding is:

> (1) whether the defendant is sufficiently coherent to provide his counsel with information necessary or relevant to constructing a defense;
>
> (2) whether he is able to comprehend the significance of the trial and his relation to it. The defendant must have an ability to confer intelligently, to testify coherently, and to follow the evidence presented. It is necessary that the defendant have a rational as well as a factual understanding of the proceedings.

*Bishop*, 118 S.W.3d at 163 (internal quotations omitted) (quoting *Kentucky Criminal Law*, § 5–4(b) p. 210 (Lexis 1998)). "The trial court has a broad discretion in determining whether a defendant has the ability to participate rationally in his defense." *Hopewell v. Commonwealth*, 641 S.W.2d 744, 748 (Ky.1982).

Although both Dr. Jefferson and Dr. Pack opined that Deanna was competent to stand trial, both experts agreed that Deanna was mildly mentally retarded and noted Deanna's severe mental limitations. Dr. Pack testified that Deanna was "marginally competent," and that as a result of her cognitive impairments, Deanna would need a lot support during the trial proceedings. In particular, Dr. Pack noted that Deanna's problems processing information would make it difficult for her to assist her attorney, as she would not know what questions to ask and could not recognize a lie. Dr. Pack questioned Deanna's ability to keep up and understand what was going on during the trial. Dr. Pack also stated that the use of unfamiliar vocabulary would require a great deal of explanation during legal proceedings and that is was "very likely" that Deanna did not understand what happening at the competency hearing. In her written report, Dr. Pack made the following conclusions regarding Deanna's competency:

> Her cognitive deficits interfere with her ability to realistically consider the nature and defenses available to her and the potential outcomes of a trial. She has no concept of legal defense strategies or pleadings and is unable to intelligently evaluate any options that might be presented by her attorney.... Deanna has a limited factual knowledge of the nature and consequences of the proceedings against her. Her intellectual and language disabilities limit her ability to achieve a rational understanding of the proceedings. She may not efficiently or

accurately follow trial events. She lacks the cognitive ability to quickly reason and make judgments regarding how and when to respond. Furthermore, Deanna is functionally illiterate (unable to read and write at a fourth grade level). As a consequence, she is unable to read and review any written evidence presented.

Even Dr. Jefferson acknowledged that Deanna has a limited ability to understand new information and would have special needs during legal proceedings. Dr. Jefferson stated that in order for Deanna to go to trial, trial language would have to be simplified, the trial would have to move at a slower pace, attorneys would have to be patient, and the pressure placed on Deanna should be limited.

■ "Competency determinations are made based on a preponderance of the evidence standard." *Thompson v. Commonwealth,* 147 S.W.3d 22, 32 (Ky.2004). In light of all the evidence of Deanna's mental impairments and limitations, we cannot say that the trial court abused its discretion in finding Deanna incompetent to stand trial. *See Edmonds v. Commonwealth,* 586 S.W.2d 24 (Ky.1979), *overruled on other grounds by Wellman v. Commonwealth,* 694 S.W.2d 696 (Ky.1985). Notwithstanding the experts' conclusions that Deanna was competent or marginally competent to stand trial, there was substantial evidence presented of Deanna's inability to participate rationally in her own defense. *See Thompson v. Commonwealth,* 147 S.W.3d at 33.

For the reasons stated above, the orders of the Bracken Circuit Court are affirmed.

All sitting. MINTON, C.J.; CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. SCOTT, J., concurs by separate opinion in which ABRAMSON, J., joins.

Concurring Opinion by Justice SCOTT.

I concur fully with the majority's determination that indigent defendants are entitled to an independent expert for a competency examination upon a showing of necessity and unavailability/impracticality of alternate state services. Here, for want of a record from which to make these determinations, we have accepted the findings of the court's order that a reasonable necessity has been shown and that no available or practicable facilities existed. However, in most instances this will not be the case as state facilities will be available, or will have already been used. Despite the absence of record from the ex parte hearing in this instance, it is clear that the trial court had significant reservations about Deanna's competency. Thus, the court appropriately exercised its discretion and permitted an additional independent examination.

I write separately for reasons that I believe, for the benefit of the Commonwealth's trial courts, some parameters should be established 1) concerning the extent of a trial judge's discretion in allowing indigent criminal defendants access to public funds in acquiring non-state expert witness competency evaluations; and 2) to define what constitutes a reasonable showing of necessity. It is those circumstances I wish to address further.

As this Court has oft noted, while a criminal defendant is not entitled to state funds merely to conduct merit less fishing expeditions, *see, e.g., Bowling v. Commonwealth,* 964 S.W.2d 803, 804 (Ky.1998), we should, likewise, not be so tight-fisted in our funding as to permit injustice where it is preventable. Trial courts are empowered by virtue of KRS 504.100(1) to order, at *any* stage of a trial's proceedings, a competency examination if "the court has *reasonable grounds* to believe that the defendant is incompetent to stand trial." (em-

phasis added). This is not to say, however, that a trial judge's discretion should be unfettered. Indeed, trial courts are the gatekeepers of evidence and must exercise caution in the determination as to whether an additional or independent evaluation should occur.

In addition to the procedural preconditions of unavailability/impracticality of state facilities, which we have previously noted, the defendant must, upon his request, demonstrate that obtaining an independent expert is reasonably necessary, *Crawford v. Commonwealth,* 824 S.W.2d 847, 850 (Ky.1992) (*citing Young v. Commonwealth,* 585 S.W.2d 378 (Ky.1979)). However, I would extend this reasonably necessary requirement further in an attempt to clarify these admittedly murky waters. I believe that in order for a trial judge to invoke his or her authority under KRS 504.100(1) and order an additional or independent competency examination, the defendant's competency must still be legitimately in question,[1] *see Ake v. Oklahoma,* 470 U.S. 68, 74, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and it appears reasonably likely that only an additional or independent evaluation will lead the court to a firm conclusion as to the defendant's fitness to stand trial. KRS 504.060(4); *see Bishop v. Caudill,* 118 S.W.3d 159, 163 (Ky.2003).

In sum, a trial court may allow or order an additional state or independent evaluation for purposes of determining competency if it still has reasonable concerns about a criminal defendant's competency. KRS 504.100. However, for these reasonable concerns to be justifiable and for a defendant to obtain an independent competency evaluation, he must demonstrate reasonable grounds by showing that state facilities are unavailable or impractical, KRS 31.185(1), and that an independent evaluation is reasonably necessary, KRS

31.110. In order to be reasonably necessary, there must be a reasonable likelihood that the defendant's competency is still legitimately in question following the state's report and a reasonable likelihood that the additional independent evaluation would assist the court in reaching a firm conclusion as to the defendant's competency.

With this framework in place, I believe trial judges would have a more reasonable analytical path upon which to exercise their discretion.

ABRAMSON, J., joins this opinion.

---

**1.** As was the circumstance here, where the defendant was, at best, marginally competent.