RENDERED:  DECEMBER 12, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0101-MR

COMMONWEALTH OF KENTUCKY                                        APPELLANT


                        APPEAL FROM FAYETTE CIRCUIT COURT
v.                   HONORABLE DIANE MINNIFIELD, JUDGE
                            ACTION NO. 23-CR-01153


DARRYL EVERETT BRIGHT, JR.                                        APPELLEE


OPINION
VACATING IN PART,
AFFIRMING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, A. JONES, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  The Commonwealth of Kentucky appeals an order of the

Fayette Circuit Court dismissing an action against Darryl Everett Bright, Jr.

("Bright") due to his lack of competency.  After review, we vacate the dismissal,

affirm the restoration conclusion, and remand with instructions to conduct a

Kentucky Revised Statute ("KRS") Chapter 202A or 202B hearing.

**FACTS & BACKGROUND**

In December 2023, the Fayette grand jury indicted Bright for theft by unlawful taking ($10,000 or more but under $1,000,000), a class C felony, and as a persistent felony offender. In May 2024, the Fayette Circuit Court ordered the Kentucky Correctional Psychiatric Center ("KCPC") to evaluate Bright for competency and criminal responsibility. That same month, Dr. Steven Sparks, a licensed psychologist with KCPC ("Dr. Sparks"), evaluated Bright and submitted his report to the circuit court.

Dr. Sparks's report described a long, consistent history of mental illness with diagnoses including, but not limited to, schizophrenia, paranoid delusions, and chronic/continuous personality disorder with antisocial traits. Dr. Sparks's report indicated that Bright had received inpatient treatment at Eastern State Hospital in 2014 for hallucinations and in 2016 for anti-psychotic medication; at Bluegrass Comprehensive Care in 2014 for trespassing charges after becoming "preoccupied with a religion"; at KCPC in 2014 and 2018 for paranoia, "odd behavior," and/or hallucinations. During at least one hospitalization, he was restrained and received "forced medication."

During his current incarceration, Bright refused to answer questions, interact with the detention center employees, or take any medication, but was able to attend to daily self-care needs. At Dr. Sparks's clinical interview, Bright was

polite, but refused to provide information about his youth, employment, substance use, or legal history. The report stated Bright had the capacity to appreciate the nature and consequences of his actions but lacked the capacity to participate rationally in his own defense. Dr. Sparks stated Bright did not appear to understand the legal process or the ramifications of a "not guilty" plea, but he did not meet the criteria for an intellectual disability.

Dr. Sparks determined Bright met the criteria for mental illness, diagnosing him with schizophrenia and antisocial personality traits. Dr. Sparks recommended Bright be admitted to KCPC for inpatient psychiatric treatment because while Bright was not currently competent to proceed with the adjudicative process, "there is a substantial probability [of him] attaining competency in the foreseeable future (360 days) with psychiatric treatment."

On November 8, 2024, the circuit court held a competency hearing. At the hearing, only Dr. Sparks testified, and his testimony was consistent with his written report. Dr. Sparks opined that Bright's competency was contingent on medication compliance and that inpatient treatment would be required for Bright to obtain competency. Although not formally sworn in to testify, Bright repeated numerous times (in conversation with the court) that he would not willingly go to KCPC nor take medication. In part, he stated,

> Physically, I'm not going, you know. Physically, I've been to KCPC and Eastern State [Hospital], and they will

f[***] you up in there if you don't take that medicine.  And I'm not going, and it gets very, very violent. . . .

They won't let me refuse medication.  Some people can. They won't let me, so I'm not going willingly because they hurt me.  If you're hurting me, I don't want to be nowhere around you.

The circuit court addressed Dr. Sparks, "He's indicated to the court that he's not willing to go to KCPC.  He's not willing to take medication.  And, so, what do you perceive as any restorability without those two options being available?"  Dr. Sparks stated, "Your Honor, it's my opinion that if he did not take psychiatric medication, he would not be likely to be restored to competency.  I think he would remain incompetent without psychiatric medication."

At the conclusion of the hearing, the circuit court found Bright not competent to stand trial based on Dr. Sparks's recommendations.  Yet, the court stated, "I'm not going to force him to be restored based on the nature of this charge, based on the nature of how long he's been in custody. . . .  Based on the nature of this charge, being a theft by unlawful taking of a vehicle that happened on August of 2023, the court does not perceive that this is someone that would be forced to be medicated under 202C[1]. . . I'm just not going to go down that road."

On November 12, 2024, the circuit court entered an order ("November Competency Order") finding Bright not competent but with the "possibility of

---

[1] KRS Chapter 202C addresses involuntary commitment proceedings.

-4-

obtaining competency through further hospitalizations at KCPC and forced administration of medication that [Bright] has indicated he WILL NOT consent to." However, the court *did not* order Bright's admission to KCPC for treatment. Instead, the court stated it "will allow the Commonwealth [to] determine how to proceed based on the nature of the charge and the length of time [Bright] has been in custody." At that time, Bright had been in custody for approximately 13 months.[2]

On November 19, the Commonwealth filed a motion to alter, amend, or vacate the judgment, asking the court to reconsider its November Competency Order. The Commonwealth did not challenge the competency finding but requested a court order admitting Bright to KCPC for treatment to restore competency as required by KRS 504.110(1). The Commonwealth argued that it was prohibited by statute to proceed in the adjudicative process – except to dismiss the case, which it was apparently not inclined to do – in light of the court's ruling that Bright lacked competency.

In December 2024, the court held a hearing on the Commonwealth's motion. After brief conversation, the court dismissed the case without prejudice with a 10-day stay ("December Dismissing Order"). The December Dismissing

---

[2] Lexington Police arrested Bright on a warrant on October 9, 2023, which is 1 year, 1 month, and 3 days prior to the November Competency Order.

Order stated, "the Court continues to stand by [its] finding at the COMPETENCY HEARING that [Bright] is not competent and not restorable within a reasonable time due to reasons stated on the record." The Commonwealth appealed.

## ANALYSIS

As an initial matter, we note much of the Commonwealth's argument on appeal pertains to the statutory ramifications of the circuit court's findings in the November Competency Order. However, we shall limit our review to the December Dismissing Order as that is the final and appealable order.

Typically, an order denying a motion to alter, amend, or vacate a judgment pursuant to Kentucky Rule of Civil Procedure ("CR") 59.05 is not the appealable order because it does not alter the underlying judgment. *See Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019); *see also* Kentucky Rule of Criminal Procedure 13.04 (permitting civil procedure rules to be applicable in criminal proceedings when not otherwise inconsistent with criminal procedure rules). Generally, it is the underlying judgment, rather than the order denying the motion, that is the appealable order. *Ford*, 578 S.W.3d at 366. However, this December Dismissing Order *substantively altered the underlying judgment*. The November Competency Order stated Bright had the possibility of attaining competency, but the December Dismissing Order determined his competency was not "restorable within a reasonable time[.]" Hence, the later order – the December Dismissing

-6-

Order – is the final, appealable order. *See* CR 54.01 ("A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding . . . .").

The parties agree Bright was not able to participate in his own defense, and thus, the Commonwealth does not challenge that aspect of the competency finding. Instead, the Commonwealth asserts (1) the circuit court's finding that Bright's competency was not restorable was erroneous because testimony showed there was a substantial probability that Bright could obtain competency in the foreseeable future; and (2) even if the circuit court's finding that Bright would not obtain competency within a foreseeable time was sufficient, the court erred in not following statutory procedure *after* it made that finding. The Commonwealth contends that the court decided time served was sufficient when it did not have the authority to make such a finding at that time.

First, we must review the circuit court's competency conclusion. "Competency determinations are made based on a preponderance of the evidence standard." *Commonwealth v. Wooten*, 269 S.W.3d 857, 865 (Ky. 2008) (citation omitted). We review a trial court's overall competency determination for an abuse of discretion. *Id.* (citation omitted). However, if the court made additional factual findings – such as the defendant's ability to understand the nature and consequences of the proceedings, to participate in his own defense, etc. – we

review those factual findings for clear error. *Alley v. Commonwealth*, 160 S.W.3d 736, 739 (Ky. 2005) (citing *Fugate v. Commonwealth*, 62 S.W.3d 15 (Ky. 2001)); *see also Wooten*, 269 S.W.3d at 864-65 (whether defendant was able to participate in her own defense reviewed for substantial evidence). Such factual findings are not clearly erroneous if supported by substantial evidence. *Fugate*, 62 S.W.3d at 18 (citation omitted).

The aspect in question here is the court's finding that Bright's competency is not restorable in the foreseeable future.[3] As that falls within the competency determination itself (as opposed to a factual finding *supporting* the decision) we review for an abuse of discretion. Hence, we must consider if the court's determination – that Bright's competency is not restorable in the foreseeable future – is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *See Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citation omitted) (defining the test for abuse of discretion).

Dr. Sparks found Bright was not currently competent to proceed with the adjudicative process, but there was a substantial probability of him attaining

---

[3] The Commonwealth states the circuit court's use of "reasonable time" is not akin to the statutory requirement of "foreseeable future." However, beyond mentioning the verbiage discrepancy, the Commonwealth does not explain how the court's language is unsupported by law or how the court's *intention* was a timeframe inconsistent with the statutory language. While we agree that utilizing statutory language is the better course of practice, the Commonwealth's mere mention of this discrepancy is insufficient. KRS 504.060(4) defines "foreseeable future" as "not more than three hundred sixty (360) days[,]" and our review of the record does not indicate the court's finding was overtly inconsistent with that statutory definition.

competency in the foreseeable future with psychiatric treatment. However, the court was not bound by the doctor's conclusions. *See Wooten*, 269 S.W.3d at 865 (holding no abuse of discretion in finding the defendant not competent despite both mental health experts' opinions to the contrary). Here, the circuit court was required to assess not just Dr. Sparks's conclusion, but the evidence as a whole. *See id.* (quoting *Thompson v. Commonwealth*, 147 S.W.3d 22, 32 (Ky. 2004)) ("Competency determinations are made based on a preponderance of the evidence standard.").

The evidence showed a long, documented history of mental illness with intermittent admissions at various mental health facilities since 2014. The report indicated Bright had a history of schizophrenia, hallucinations, "bizarre behavior," problems with short-term memory, antisocial personality traits, and paranoid delusions. Additionally, Dr. Sparks testified that despite repeated attempts at explaining the process, Bright was unable to repeat and understand the implications of a "not guilty" plea or the adjudicative process. Dr. Sparks also admitted that his own assessment was hindered due to Bright's unwillingness to answer questions, as well as his defensiveness and suspiciousness. Dr. Sparks testified,

> I think he does experience a mental illness. I think he has symptoms, including some lack of insight. I think he doesn't recognize these symptoms, but I think they interfere with his ability to provide information, to

understand the case in a rational fashion. I think it would interfere with his ability to appropriately engage in self-protective reasoning and say things that could potentially help himself versus hurt him.

Moreover, the circuit court was not wholly reliant on Dr. Sparks's assessment. During numerous hearings, the court had direct conversations with Bright and witnessed his behavior firsthand. Bright was able to converse with the court, but at times he appeared confused, paranoid, and combative. He consistently, repeatedly told the court he did not want to take medication, nor did he wish to receive inpatient treatment.

In light of all the evidence, we cannot say the circuit court abused its discretion in finding Bright's competency was not restorable in the foreseeable future as that conclusion was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

Second, we must review the circuit court's application of the applicable statutes. "[S]tatutory interpretation raises pure questions of law, so our review is *de novo*, meaning we afford no deference to the decisions below." *Commonwealth v. B.H.*, 548 S.W.3d 238, 242 (Ky. 2018) (citing *Dep't of Revenue, Fin. & Admin. Cabinet v. Cox Interior, Inc.*, 400 S.W.3d 240, 242 (Ky. 2013)).

KRS 504.110 addresses the proper procedure to implement after a trial court finds a defendant not competent. Subsection (1) mandates next steps after a court finds a defendant incompetent but there is a substantial probability the

-10-

defendant will attain competency in the foreseeable future. KRS 504.110(1).

Subsection (1) is not pertinent here. Instead, Subsection (2) addresses next steps

after a court finds a defendant incompetent and "there is *no substantial probability*

[the defendant] will attain competency in the foreseeable future[.]" KRS

504.110(2) (emphasis added). Here, the December Dismissing Order triggered

KRS 504.110(2) as the order stated Bright's competency was "not restorable

within a reasonable time due to reasons stated on the record."

Next, taking a closer look into Subsection (2), KRS 504.110(2)(a)

addresses procedure for capital offenses, class A felonies, and class B felonies;

KRS 504.110(2)(b) is applicable for all other offenses. Bright's theft charge was a

class C felony. As such, KRS 504.110(2)(b) states:

> (2) If the court finds the defendant incompetent to stand trial and there is no substantial probability he or she will attain competency in the foreseeable future . . .
>
> . . .
>
> (b) The court shall conduct an involuntary hospitalization proceeding under KRS Chapter 202A or 202B if the defendant is charged with an offense not listed in paragraph (a) of this subsection.

We understand the circuit court's attempt at judicial economy, but the

statute requires an additional step. We agree with the Commonwealth that the

statute mandates an involuntary hospitalization proceeding under KRS Chapter

202A or 202B after finding a defendant incompetent without a substantial probability of attaining competency in the foreseeable future. Here, the circuit court made such a finding without then ordering the required subsequent hearing. Instead of ordering the required hearing, the circuit court dismissed the action. Although it was without prejudice, this did not negate the court's obligations under the statute.

When analyzing a statute, we first look "to the plain language of a statute and, if the language is clear, our inquiry ends." *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017) (citing *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005)). "[W]e assume that the '[Legislature] meant exactly what it said, and said exactly what it meant.'" *O'Daniel*, 153 S.W.3d at 819 (alteration in original) (quoting *Stone v. Pryor*, 45 S.W. 1136, 1142 (Ky. 1898)). Here, the statute states a court "shall" conduct a proceeding, and we are not at liberty to interpret "shall" as anything short of a mandate.

> This Court has generally interpreted the word "shall" to connote a mandatory sense unless the context of a statute requires otherwise. KRS 446.010(39); *Cabinet for Health & Fam. Servs. ex rel. Child Support Enforcement v. B.N.T.*, 651 S.W.3d 745, 750 (Ky. 2022). We have previously explained that "[i]n common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command and . . . must be given a compulsory meaning." *Bevin v. Commonwealth ex rel. Beshear*, 563 S.W.3d 74, 89 (Ky. 2018) (quoting *Vandertoll v. Commonwealth*, 110 S.W.3d 789, 795-96 (Ky. 2003)). In short, "[s]hall means shall." *Id.*

-12-

*Kulkarni v. Horlander*, 701 S.W.3d 181, 188 (Ky. 2024). The language of KRS 504.110(2)(b) is plain and unambiguous and the involuntary hospitalization proceeding requirement is clear. If the court makes the requisite finding, the court "shall conduct an involuntary hospitalization proceeding under KRS Chapter 202A or 202B . . . ." KRS 504.110(2)(b). The text of that statute does not require either party to petition for such a proceeding. Hence, the circuit court erred in dismissing the action prior to conducting a KRS Chapter 202A or 202B hearing.[4]

**CONCLUSION**

In light of the foregoing, we VACATE the dismissal, AFFIRM the restoration conclusion, and REMAND for an involuntary hospitalization proceeding under KRS Chapters 202A or 202B as required by KRS 504.110(2)(b).

ALL CONCUR.

BRIEFS FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

James Havey
Assistant Solicitor General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Steven J. Buck
Frankfort, Kentucky

---

[4] KRS Chapter 202A addresses hospitalization of the mentally ill; KRS Chapter 202B addresses hospital/facility admission of an individual with an intellectual disability.