RENDERED: OCTOBER 23, 2025
MODIFIED: FEBRUARY 19, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0113-MR

THOMAS R. MOORE                                        APPELLANT

             ON APPEAL FROM TODD CIRCUIT COURT
V.             HONORABLE JOE W. HENDRICKS, JR., JUDGE
                      NO. 18-CR-00011

COMMONWEALTH OF KENTUCKY                   APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

The Court, after granting a petition for rehearing, now issues the following modified Opinion:

In 2018, Thomas R. Moore pled guilty to fourth-degree driving under the influence (DUI) of drugs,[1] second-degree driving on a DUI-suspended license while under the influence,[2] and of being a second-degree persistent felony offender (PFO-2). This Court vacated the Todd Circuit Court's original sentence and remanded "to resentence Moore on the two Class D felonies, pursuant to

---

[1] This was a Class D felony offense as it was Moore's fourth offense or greater within ten years. Kentucky Revised Statutes (KRS) 189A.010(1), (5)(d).

[2] This was a Class D felony offense because 1) Moore violated KRS 189A.010(1)(c) while driving on a DUI-suspended license *and* 2) it was Moore's second offense or greater within ten years. KRS 189A.090(1), (2)(b).

KRS 532.110 and KRS 532.080." *Commonwealth v. Moore*, 664 S.W.3d 582, 591 (Ky. 2023). Upon remand, the trial court resentenced Moore to an aggregate of 20 years' imprisonment. Moore now appeals his sentence as a matter of right pursuant to Section 110(2)(b) of the Kentucky Constitution.

This Court must address: (1) whether Moore was competent for resentencing as mandated by KRS 504.090 and defined by KRS 504.060(5); and, if so, (2) whether the trial court erred by resentencing Moore to an aggregate sentence of 20 years' imprisonment. Having carefully considered the record, law, and briefs, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2018, Moore was indicted for various traffic offenses, including fourth-degree DUI, second-degree driving on a DUI-suspended license while under the influence, and a PFO-1.[3] Moore reportedly made "off-the-wall" comments during his arrest.[4] On April 11, 2018, Moore's lawyer expressed concern[5] and moved the trial court to have Moore evaluated as to his competency to stand trial at the Kentucky Correctional Psychiatric Center (KCPC) under KRS 504.080(1). The trial court granted this motion. On May 24, 2018, Dr. Susan Brittain-Seitz of KCPC evaluated Moore and prepared a report regarding Moore's competency.

---

[3] *See* KRS 532.080(3), (6)-(7), (10)(b).

[4] The arrest citation noted that "[Moore] continued to speek [sic] of off the wall items, thing [sic], and places" but provided no examples or observations.

[5] Moore's lawyer did not detail what precisely prompted his request for competency evaluation, only stating that he would not be "doing his job" after affirming that he had "seen something or heard something that cause[d]" alarm.

On June 27, 2018, Dr. Brittain-Seitz testified at Moore's competency hearing that Moore was an in-patient at KCPC from May 7, 2018, until May 25, 2018. She concluded Moore was competent based on his capacity to understand the criminality of his conduct and opined that he may have feigned psychiatric symptoms at times (*i.e.*, endorsing unusual sensory things, magical thinking, and delusional beliefs).

Subsequently, the Commonwealth offered Moore a plea deal which "recommended that [he] receive a prison sentence of three years enhanced to ten years due to [his PFO-2 status] and that [both] ten-year sentences [would] run consecutively."[6] *Moore*, 664 S.W.3d at 585. Moore pled guilty the same day, which probated his twenty-year prison sentence for five years. Nine days later, the Commonwealth filed a motion to revoke Moore's probation.[7] The trial court amended its final judgment, which not only imposed a twenty-year sentence for the two Class D felonies but also mistakenly imposed twenty years for the PFO-2 charge itself, directing "all sentences run concurrently for a total of twenty years." *Id.*

Moore, *pro se,* moved to vacate his twenty-year sentence, arguing that his PFO-2 charge was wrongly treated as an independent conviction instead of

---

[6] The Commonwealth's plea agreement amended Moore's PFO enhancement classification down from first-degree to second-degree, KRS 532.080(2), (5); dismissed Moore's drug possession and paraphernalia charges; and fined Moore for the other convictions. *See Moore,* 664 S.W.3d at 585.

[7] Moore's probation was revoked for failure to report to his probation officer; Moore subsequently failed to attend his August 1, 2018, revocation hearing.

an enhancement.[8] The trial court denied Moore's motion, but the Court of Appeals reversed and remanded holding the twenty-year sentence for the PFO-2 charge to be palpable error. *Moore v. Commonwealth*, No. 2019-CA-1549-MR, 2021 WL 3686070 at *2 (Ky. App. Aug. 21, 2021). That court additionally found Moore's probation revocation to be in error because the trial court failed to transcribe its findings to support revocation. *Id.* at *3. This Court upheld Moore's probation revocation and addressed the "sentencing issue" by vacating the trial court's twenty-year sentence for the PFO-2 enhancement and remanding "for Moore's resentencing" of the two Class D felonies. *Moore*, 664 S.W.3d at 590-91.

On March 20, 2023, Moore appeared with defense counsel at resentencing and made odd and religious-focused statements, including references to a misplaced shaman cross, his identity as "the lamb of God," the presence of a third eye on his genitals, and a sex change transformation he endured at the age of six. Concerned, the trial court ordered Moore to undergo another competency evaluation at KCPC. On May 22, 2023, Dr. Steven Sparks of KCPC evaluated Moore and prepared a second report regarding Moore's competency.

On July 19, 2023, Dr. Sparks testified at Moore's second competency hearing that Moore was very cooperative yet exhibited religious delusional

---

[8] Moore argued under both Kentucky Rules of Criminal Procedure (RCr) 10.26 and its identical counterpart Kentucky Rules of Civil Procedure (CR) 61.02. *See Nami Res. Co., LLC v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 338 (Ky. 2018) (noting the resemblances between the two procedural rules).

thinking and made odd statements during the evaluation, including Moore claiming both to be "related to the Bible" and to be "cured of everything" because he "was built to be a medicine man."  Dr. Sparks diagnosed Moore with an unspecified psychotic disorder, which involves a lack of contact with reality.  And though Dr. Sparks agreed Moore could understand the nature and consequences of the resentencing proceedings against him, he nonetheless believed Moore was incompetent due to impaired rational decision-making that included his inability to communicate rationally with defense counsel because his religious hyper-fixation would impair his legal strategy regarding sentencing.  Dr. Sparks opined that Moore could be restored to competency with in-patient medical treatment.  The trial court, chagrined by Dr. Sparks' report, ordered Moore to be re-evaluated for competency determination at KCPC.  On January 9, 2024, Dr. Martine Turns of KCPC evaluated Moore and prepared a third report regarding Moore's competency.

On February 2, 2024, Dr. Turns testified at Moore's third competency hearing that Moore was very cooperative, did not exhibit any signs of psychosis during the evaluation, and expressed alacrity in completing the evaluation.  Dr. Turns both acknowledged that KCPC forcibly administered a daily anti-psychotic medicine (20mg of Abilify) to treat Moore's delusional thinking from November 30, 2023, until January 9, 2024, and indicated that Moore's competency was contingent on his ongoing medication compliance.  Dr. Turns later acknowledged both that Moore historically refused his medications and that the county jail could not forcibly administer his medications like KCPC.

5

Dr. Turns, unlike Dr. Sparks, firmly concluded that because Moore had achieved optimal response to medical treatment, he could appreciate the nature and consequences of the resentencing proceedings against him and was competent to be resentenced. Dr. Turns testified that Moore (1) exhibited no signs of delusional thinking; (2) expressed positivity and hope for a favorable trial outcome; (3) could give specific details of his 2018 arrest and place them along an accurate timeline (Dr. Turns stressed this was *abnormal* for someone in Moore's position); (4) displayed adequate behavior (Dr. Turns commented Moore was very polite during the evaluation) and vocabulary; (5) understood his rights as they pertained to resentencing; and (6) even expressed positivity about his attorney and his attorney's performance. Most notably, Dr. Turns opined that Moore had the capacity to relate to his attorney and could participate rationally in his defense.

Moore timely objected and argued he could not be found competent until the Commonwealth proved that he remained compliant with his medication at the county jail. Moore further argued that he should be able to make a statement at his resentencing and could not do so if he is incompetent. Nevertheless, the trial court proceeded to resentence Moore to twenty years' imprisonment, in accordance with his 2018 plea agreement with the Commonwealth. Moore argued his twenty-year sentence was illegal based on this Court's decision reversing his previous sentence. The Commonwealth clarified by stating that this Court specifically vacated the "illegal twenty-year sentence for the [PFO-2] charge" and remanded for Moore's resentencing on the

underlying two Class D felonies. *Moore*, 664 S.W.3d at 591. Moore now appeals the trial court's amended final judgment.

## II. LAW AND ANALYSIS

### A. The trial court correctly determined Moore was competent for resentencing.

KRS 504.090 prohibits sentencing incompetent defendants "*so long as the incompetency continues.*" (Emphasis added). KRS 504.060(5) defines "incompetency" as a mental condition which "lack[s] capacity to appreciate the nature and consequences of the proceedings against one or to participate rationally in one's own defense." *Moody v. Commonwealth*, 698 S.W.2d 530, 532 (Ky. 1985).

Moore argues the trial court erred because it resentenced him when he was incompetent. Specifically, Moore argues Kentucky law requires he be able to participate rationally in his own defense. *Commonwealth v. Griffin*, 622 S.W.2d 214, 216 (Ky. 1981). Moore argues his participation was necessary in February 2024 to be resentenced and the Commonwealth failed to prove he remained compliant with his medication once discharged from KCPC. Moreover, the trial court primarily relied upon Dr. Turns' report to determine Moore's competency, which contradicted Dr. Sparks' earlier report. Thus, he argues the trial court could not have resentenced him under KRS 504.090.

The Commonwealth responds that the trial court could resentence Moore because, while Dr. Sparks found him incompetent in July 2023, Dr. Turns found him competent and testified to such findings on February 2, 2024, the

7

day the resencing occurred. And though defendants may participate rationally in their own defense, the Commonwealth argues that this Court should eschew entertaining such participation at a resentencing. The Commonwealth further argues that although the trial court was chagrined at Dr. Sparks' conclusion that Moore was incompetent in July 2023, it nonetheless ordered Moore to be re-evaluated for further competency determination at KCPC. And Dr. Turns concluded in February 2024 that Moore was competent and could appreciate the nature and consequences of the resentencing proceedings against him.

Moore's objections before the trial court properly preserved this issue for our review. "A competency determination is based on the preponderance of the evidence standard." *Keeling v. Commonwealth*, 381 S.W.3d 248, 262 (Ky. 2012) (citing *Chapman v. Commonwealth*, 265 S.W.3d 156, 174 (Ky. 2007)). "[A trial] court's determination of competency is a factual finding." *United States v. Branham*, 97 F.3d 835, 855 (6th Cir. 1996); *see also Bishop v. Caudill*, 118 S.W.3d 159, 161 (Ky. 2003). "We may disturb a trial court's competency determination only if the . . . decision is clearly erroneous (*i.e.*, not supported by substantial evidence)." *Keeling*, 381 S.W.3d at 262. The test for competency is whether Moore had "substantial capacity to comprehend the nature and consequences of the proceeding pending against him and to participate rationally in his defense." *Alley v. Commonwealth*, 160 S.W.3d 736, 739 (Ky. 2005). Notably, "[c]ompetency to stand trial . . . pertains to the

defendant's mental state *at the time of trial.*" *Bishop*, 118 S.W.3d at 162 (emphasis added).

Here, Dr. Turns' testimony provided substantial evidence that Moore had been restored to competency and had substantial capacity to appreciate the nature and consequences of the resentencing proceedings against him. Moreover, nothing at the February 2024 competency hearing indicated that Moore became non-compliant with his medication once discharged from KCPC. Furthermore, Moore's demeanor in February 2024 heavily contrasted with his demeanor in March 2023: Moore never interrupted with delusional thoughts, was respectful and engaged during the entire proceeding, and even appeared to be reading along as Dr. Turns testified to her report. In other words, Moore made no showing to the trial court that he was incompetent.

Moore also argues that his rational participation at resentencing was necessary. Yet, as the trial court correctly observed, his resentencing in February 2024 was simply a technical correction and, while Moore could speak at his resentencing, it did not view his participation as *necessary*. We agree as the issue of a defendant's competency is not singularly restricted to one's rational participation.

Lastly, Moore argues that Dr. Turns' February 2024 report contradicts Dr. Sparks' earlier July 2023 report. Albeit true, it is immaterial to our analysis. *Keeling*, 381 S.W.3d at 261-64 (discussing two temporally separate competency reports and the trial court's determination that the defendant was competent despite his psychosis). Thus, the trial court correctly determined

9

Moore was competent on February 2, 2024, the date he was resentenced. *Bishop*, 118 S.W.3d at 162.

### B. Moore's 20-year aggregate sentence was legal.

Moore argues the aggregate 20-year sentence he received on resentencing was illegal because the original judgment, which this Court vacated, directed that "all sentences run concurrently for a total of twenty years." We disagree.

In *Moore*, we vacated Moore's original sentence because the trial court erroneously imposed a twenty-year sentence for PFO-2 as a standalone offense rather than as an enhancement for underlying charges. 664 S.W.3d at 591. Because we were unable to ascertain from the record "what sentence was imposed on Moore for the two class D felonies[,]" we remanded for resentencing "pursuant to KRS 532.110 and KRS 532.080." *Id.*

Generally, the vacatur of a criminal sentence by an appellate court "wipe[s] the slate clean" and renders such a sentence null and void. *Pepper v. United States*, 562 U.S. 476, 507 (2011). Because a trial court's "'original sentencing intent may be undermined by altering one portion of the calculus,' an appellate court when reversing one part of a defendant's sentence 'may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan[.]'" *Id.* (internal citation omitted).

Here, we vacated Moore's sentence and effectively remanded for de novo resentencing. *Moore*, 664 S.W.3d at 591; *Pepper*, 562 U.S. at 507. Because the original sentence was vacated, the trial court was not bound by its terms on resentencing. *Pepper*, 562 U.S at 507. The present posture of this appeal

10

does not involve any discrepancy between a written judgment and a trial judge's oral remarks. Thus, Moore's reliance on *Machniak v. Commonwealth*, 351 S.W.3d 648 (Ky. 2011), is misplaced.

The trial court fully complied with our mandate on remand. The amended judgment reflects that Moore was sentenced to three years' imprisonment on both the fourth-degree DUI charge and the second-degree driving on a DUI-suspended license while under the influence charge. The three-year sentence on each charge was enhanced to ten years by the PFO-2 conviction. The trial court further ordered the enhanced 10-year sentence on the fourth-degree DUI charge to run consecutively to the enhanced 10-year sentence on the second-degree driving on a DUI-suspended sentence charge. We further observe that the amended judgment is consistent with Moore's original plea agreement.

In addition, we perceive no indication the total sentence of twenty years' imprisonment exceeds the statutory cap under KRS 532.110(1)(c). Although Moore did not raise any issue relative to KRS 532.110(1)(c), we have previously "recognize[d] that appellate briefing is not required for a defendant to be granted relief from an illegal sentence." *Moore*, 664 S.W.3d at 591.

KRS 532.110(1) vests a trial court with discretion to determine whether "multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime . . . shall run concurrently or consecutively[.]" "This discretion is not unfettered, however" because "KRS 532.110(1)(c) provides a limitation on the aggregate length of sentences to be consecutively served." *Castle v.*

11

*Commonwealth*, 411 S.W.3d 754, 756 (Ky. 2013). KRS 532.110(1)(c) states as follows:

> (1) When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that:
>
> . . .
>
> (c) 1. Except as provided in paragraph (d) of this subsection, the aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed, except as described in KRS 533.060(2) or (3).
>
> > 2. In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years[.]

"We have consistently acknowledged that KRS 532.110(1)(c)'s reference to KRS 532.080, Kentucky's Persistent Felony Offender statute, is only a 'yardstick' to determine the maximum allowable term of incarceration for consecutive sentences." *Castle,* 411 S.W.3d at 757. "For purposes of KRS 532.110(1)(c), a defendant does not have to be adjudicated a Persistent Felony Offender for his sentence to be determined by reference to our PFO statute." *Id.* (citing *Bedell v. Commonwealth,* 870 S.W.2d 779, 783 (Ky. 1993)).

Moreover, KRS 532.110 "requires that KRS 532.080 be used to establish the maximum aggregate sentence for a person convicted of multiple offenses, without regard to whether the penalties for those offenses have been enhanced." *Commonwealth v. Durham,* 908 S.W.2d 119, 121 (Ky. 1995). "When KRS 532.080 is applied to determine the maximum aggregate penalty,

12

as opposed to being used to enhance a penalty, the appropriate reference in a case where the underlying felonies are Class D or C felonies is to subsection (6)(b) rather than to subsection (5)." *Id.*

KRS 532.080(6)(b) states:

(6) A person who is found to be a persistent felony offender in the first degree shall be sentenced to imprisonment as follows:

. . .

(b) If the offense for which he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years.

This Court has further explained "the 'yardstick' set out in 532.080 for measuring said maximum length," under KRS 532.110(c), "was never intended to incorporate from 532.080 its other terms affecting PFO sentencing only." *Bedell*, 870 S.W.2d at 783.

The facts in *Durham* are remarkably similar to the present appeal. The defendant pled guilty to two Class D felonies and PFO-2. 908 S.W.2d at 120. The trial court sentenced the defendant "to five years on each of the underlying offenses and each sentence was then enhanced to ten years because of his persistent felony status." *Id.* The sentences were ordered to run consecutively for a total of twenty years' imprisonment. *Id.*

After serving ten years, the defendant filed a motion to modify his sentence, which the trial court denied. *Id.* On direct appeal, the Court of Appeals reversed, holding that "the maximum aggregate sentence for a

13

persistent felony offender in the second degree who is convicted of multiple Class D felonies is ten years." *Id.* We granted discretionary review and reversed the decision of the Court of Appeals. *Id.*

We explained the interplay between KRS 532.110(1)(c) and KRS 532.080 as follows:

> KRS 532.110(1)(c) refers in general to KRS 532.080 in establishing the longest extended term. The longest extended term for a Class D felony under KRS 532.080 is set at twenty years.
>
> Reference in KRS 532.110(1)(c) to KRS 532.080 is concerned with the maximum number of years imprisoned set out in the entire statute. The cross-reference between the statutes did not depend on the degree of a defendant's status as a persistent felony offender. Any other reading would produce an absurd result and be contradictory to the plainly expressed legislative intent.
>
> . . .
>
> KRS 532.110(1) requires that KRS 532.080 be used to establish the maximum aggregate sentence for a person convicted of multiple offenses, without regard to whether the penalties for those offenses have been enhanced. When KRS 532.080 is applied to determine the maximum aggregate penalty, as opposed to being used to enhance a penalty, the appropriate reference in a case where the underlying felonies are Class D or C felonies is to subsection (6)(b) rather than to subsection (5).

*Id.* at 121.

As noted by *Castle*, 411 S.W.3d at 757, this Court has consistently applied the principle that a defendant's actual PFO status is immaterial to determining the maximum aggregate consecutive sentence under KRS 532.110(1)(c) and KRS 532.080. Likewise, the Court of Appeals has specifically rejected the notion that the maximum aggregate sentence depends on the

14

underlying degree of PFO status and cogently explained the principle relative to

Class D felonies:

> The basis for Milner's argument arises from the fact that KRS 532.080 was amended in 1976 to provide for first and second-degree persistent felony offenders. The maximum sentence for a second-degree PFO with a current conviction for a Class D felony is 10 years. KRS 532.080(5) and KRS 532.060(2)(c). **However, we see no necessity to become entwined with arguments regarding degrees of persistent felons because the real issue merely involves consecutive terms for multiple sentences.** Milner was not a persistent felon in any degree. He was a first offender with 105 convictions and sentences for Class D felonies. KRS 532.080, as amended, also establishes 20 years as the maximum indeterminate term for a Class D felony. KRS 532.080(6)(b). **It is true that the 20-year maximum is what is applicable to a first-degree persistent felony offender, but it is nevertheless the maximum length for an extended term which is authorized by KRS 532.080, as is allowed under KRS 532.110.**

*Milner v. Commonwealth,* 655 S.W.2d 31, 32 (Ky. App. 1983) (emphasis added).

Notably, the reasoning of *Milner* was cited with approval by this Court in

*Durham,* 908 S.W.2d at 120. Based on the authorities cited above, we

conclude Moore's aggregate twenty-year sentence is legal and comports with

KRS 532.110(1)(c) and KRS 532.080.

### CONCLUSION

For the foregoing reasons, the judgment of the Todd Circuit Court

is hereby affirmed.

All sitting. All concur.

15

COUNSEL FOR APPELLANT:

Kayla D. Deatherage
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General